**UNITED STATES of America, Appellee,**

v.

**Albert Eugene CARMICHAEL, Jr., Appellant.**

Nos. 83–6223, 83–6250.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1983.

Decided Jan. 26, 1984.

Mark F. Pomerantz, New York City (Ronald P. Fischetti, Anne C. Feigus, New York City, on brief), for appellant.

David J. Slattery, Asst. U.S. Atty., Washington, D.C. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., on brief), for appellee.

Before WIDENER, MURNAGHAN and SPROUSE, Circuit Judges.

WIDENER, Circuit Judge:

Carmichael was convicted in 1981 of charges relating to an absentee ballot vote buying scheme in the 1980 Democratic primary election in Dillon County, South Carolina, and of obstruction of justice in connection with the grand jury investigation of the election. The convictions were affirmed on appeal, *United States v. Carmichael,* 685 F.2d 903 (4th Cir.1982), and a petition for a writ of certiorari to the Supreme Court was denied. A motion for a new trial on the ground of after discovered evidence was filed in March 1983 and denied. It is the denial of that motion that is the subject matter of this appeal. Carmichael claims the motion should have been granted on its merits and that the trial judge should have disqualified himself. We affirm.

At a hearing on the motion for a new trial, Carmichael presented testimony which he claimed showed after discovered evidence to the effect that he had been mistakenly identified as a participant in a conversation allegedly crucial to his conviction. Sammy Lee Cato, a witness at the original trial, had testified originally that he heard Carmichael discuss vote buying with Sheriff Roy Lee (who pleaded guilty to charges of conspiracy to buy votes). At the hearing on the new trial motion, Cato testified that he presently remembered more facts about the political picnic at Carmichael's lake cabin at which he had heard talk of vote buying, and specifically recalled that Carmichael had left that party early. Cato's testimony upon the motion for a new trial was that he presently did not know who were the participants in the conversation he had earlier overheard but that it could not have been Carmichael for Carmichael was not there. Other witnesses also testified that Carmichael had left the party early. One even strongly inferred that he himself had made the overheard statement.

The district court heard all the testimony Carmichael and the government offered on the subject of Cato's recantation and found Cato had been the object of extensive persuasive efforts by Carmichael and Carmichael's associates. Beginning in November 1982, Carmichael and his friend David Taylor arranged several meetings with Cato in Washington, D.C. (Cato's then current residence) and in South Carolina. Cato was asked repeatedly to change his story at these meetings, despite his declarations that his trial testimony had been accurate. Carmichael recommended at least some, and paid for all, of the various attorneys representing Cato at these meetings and at the hearing on the motion for a new trial, and gave Cato and his sister money (for time and expenses), perhaps as much as several thousand dollars. In February 1983, Cato signed an affidavit with the new version of the facts.

The district court denied the motion for a new trial. It found that Carmichael had not met any of the three requirements of *United States v. Wallace,* 528 F.2d 863 (4th Cir.1976), which are that the court must be reasonably satisfied that the testimony given by the material witness in the first instance was false; that without it the jury might have reached a different conclusion; and that the defendant was taken by surprise by the false testimony and was unable to meet it or did not know of its falsity until after the trial. While we are of opinion that the district court reached the correct result in its opinion on each of the requirements of *Wallace,* we will dwell on only the first of them in brief detail. The failure to meet any of the requirements is fatal. *United States v. Johnson,* 487 F.2d 1278 (4th Cir.1973).

As stated, the district court found that it was not reasonably satisfied that the testimony given by Cato at Carmichael's trial was false. In making this factual finding, it saw the witnesses and heard them testify. It credited, for example, the

testimony of one Blitzer, the first of several attorneys who represented Cato with respect to his recantation and the hearing on a motion for a new trial. Blitzer testified that, at a meeting in Washington, D.C. which went on for six hours, Carmichael and others kept suggesting to Cato, who is described by Carmichael's attorneys as semi-literate, that he (Cato) had made a mistake in his trial testimony, but Cato throughout that meeting stood fast to his position that he had told the truth at the trial, and only conceded that he might have been mistaken about the particular occasion at which he overheard Carmichael's remark. Carmichael recommended at least some, and paid for all, of the various attorneys representing Cato with respect to the motion for a new trial. Carmichael paid Cato money for expenses and time in connection with his recantation, which admittedly was in excess of $1100 and possibly was in excess of several thousand dollars. Cato admitted he received $480 on one occasion, at least $350 on two or more occasions, and that he was paid on six occasions. Additionally, Carmichael paid Cato's sister's expenses on all of the trips leading up to Cato's affidavit. Meeting after meeting was held with Cato before he agreed to recant. The witnesses called to corroborate Cato's recantation were colleagues or allies of Carmichael. For example, Gerald Turner had been convicted of participation in vote buying in the same primary, Donnie Worley had been employed by Carmichael and his family for more than twenty years, and Leon Moody had pleaded guilty to conspiracy to buy votes in the same election. Cato gave prior statements consistent with his trial testimony and had testified before the grand jury consistently with his trial testimony. On these facts, the district court was justified in its finding that Cato was intimidated, cajoled, and pressured in attempting to get him to change his trial testimony, and the district court's belief that Cato testified truthfully at the trial is amply justified by the record.

Findings of the district court made on a motion for a new trial based on newly discovered evidence should not be disturbed except for most extraordinary circumstances and unless it clearly appears they are not supported by any evidence. *United States v. Johnson,* 327 U.S. 106, 111, 112, 66 S.Ct. 464, 466, 467, 90 L.Ed. 562 (1946). The requirements of *Wallace* and *Johnson* are stringent, and Carmichael has failed to present any basis to reverse the district court. The denial of a new trial for after discovered evidence is affirmed.

Carmichael also argues that the district judge did not hear the new trial motion with requisite impartiality. A motion for recusal was denied by the judge at the beginning of the hearing on the motion for a new trial.

▆ Every litigant is entitled to be heard by an impartial judge. 28 U.S.C. § 455; e.g. *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). The standard to be applied is an objective one, to foster not only actual impartiality but also the appearance of impartiality. E.g. *Potashnick v. Port City Construction Co.,* 609 F.2d 1101, 1111 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). On review, the question is whether or not the judge abused his discretion. *Phillips v. Joint Legislative Committee, etc.,* 637 F.2d 1014, 1021 (5th Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982). The alleged bias must, however, be personal, as distinguished from judicial, in nature. *Id.* at 1020; *Tug Valley Recovery Center v. Watt,* 703 F.2d 796, 801 (4th Cir. 1983). A denial of recusal is thus not an abuse of discretion if the complaint is "merely based upon the judge's rulings in the instant case or related cases ... or attitude derived from his experience on the bench." *Phillips,* 637 F.2d at 1020. *See e.g. United States v. Grinnell Corp.,* 384 U.S. 563, 581–83, 86 S.Ct. 1698, 1709–10, 16 L.Ed.2d 778 (1966).

▆ The remarks complained of in this case attributed to the trial judge reveal no personal bias. While their use in Carmichael's brief may not be taken as remarks out of context in the worst sense that phrase is

used, the picture they are used to paint comes close to fitting that description.

For example, Carmichael objects to "You may get relief from the appellate court but you are not going to get it from me" and "[a hearing] would be an exercise in futility." Those comments were made in the context of argument on a motion to grant an evidentiary hearing on the motion for a new trial. The argument necessarily dwelled upon the strength of the motion for a new trial, and the judge, of course, took account of his experience at the trial of this case and after, and had before him the affidavits filed by Cato, Donnie Worley, and Gerald Turner. The evidentiary hearing, incidentally, was granted. The comments objected to are nothing more than a judge's evaluation of the strength of the motion and its low likelihood of success. They may not, even strained, be taken to be a personal refusal to permit Carmichael access to relief available to him or a prejudgment of the merits. *Phillips,* 637 F.2d at 1020.

Carmichael also objects that the trial judge stated that he "had some 'pretty definite feelings about the entire [Carmichael] situation'". In context, the statement was made during the argument of whether or not to have an evidentiary hearing and the date of that event and, if anything, expressed the desire of the court to see that the defendant received his due, not otherwise as defendant now seeks to portray. The statement was: "That is, if I am compelled to have an evidentiary hearing. Of course, I have some pretty definite feelings about the entire situation, but I do want to get it into a situation, a status where you can seek whatever appellate redress you may want to seek." We think that, read in context, the statement is innocuous.

Another objection is that the judge recited that he had "been down this road before with the same defendant." The judge was merely reciting an historical fact. Carmichael had been tried and convicted in the same court in 1974 and the same judge had granted a new trial, in the words of Carmichael's attorneys, "based on the recantation of the principal witness against him." In all events, the court sustained defense counsel's objection to consideration of that matter, stating "... I must say I would be willing to forget about that and it wouldn't change my thinking."

The final reason given in the motion that the trial judge recuse himself was that "You [the trial judge] were thoroughly convinced that the defendant had no hope of prevailing." In context, the statement was made in the course of denying Carmichael's motion to be let to bail, and was "Well, I don't want to build up any false hopes for you, because I tried the case, I watched what's developed throughout the appellate process, I have some very definite ideas about it. And if I felt that the defendant had any reasonable hope of prevailing, on his motion ultimately, I would have no hesitancy in granting bail. But I am thoroughly convinced that the defendant has no real hope of prevailing." Of course, the defendant's realistic hope of prevailing is an appropriate consideration in deciding whether or not to grant bail. And this statement, like the others, reveals no personal bias against Carmichael.

The defendant also alludes to comments made by the trial judge during the evidentiary hearing on the motion for a new trial as demonstrating his personal bias against Carmichael. The defendant terms the judge's comments "outrageous," in conclusion stating they were "capped off finally by the statement that Carmichael's vigorous pursuit of the new trial motion "almost amount[ed] to 'trifling with the Court.'" Again, in context, the statement was made at the conclusion of the evidentiary hearing, at which time the judge said in full "Actually, I don't want to use too strong of language, but I am compelled to the view that pursuing this motion with vigor almost amounts to trifling with the Court, under the circumstances. And of course it may be that a grand jury of this court should consider whether there has been a subornation of perjury or an obstruction of justice on

.the part of anyone involved in this situation.

"The motion for a new trial is denied."

A reading of the record in this case shows that those remarks of the judge were justified. Certainly, they reflect no personal bias.

We are of opinion the district court did not abuse its discretion in denying the recusal motion. While the district judge may have been overly sensitive to what he considered personal criticism of his handling of the case, the record reveals no personal bias against Carmichael, and we are of opinion the judgment of the district court should be, and it hereby is,

AFFIRMED.