**UNITED STATES of America,**

v.

**Louis GUGLIELMI.**

**No. C–CR–85–59.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

Aug. 23, 1985.

Debra J. Stuart, Asst. U.S. Atty., Charlotte, N.C., for plaintiff.

Harold J. Bender, Charlotte, N.C., Burton Sandler, Baltimore, Md., H. Louis Sirkin, Cincinnati, Ohio, for defendant.

### ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER came on for hearing on August 19, 1985 upon Defendant's Motion to Recuse, filed July 31, 1985. Defendant was represented by Harold Bender and Bert Sandler. The United States was represented by Debra J. Stuart.

Defendant, who is charged with allegedly violating and conspiring to violate certain federal obscenity laws (18 U.S.C. §§ 1465 and 1462), moves the undersigned to recuse himself from this case and to assign this case to another Judge.

Defendant's motion is brought pursuant to 28 U.S.C. §§ 144 and 455(a). Those sections read, in pertinent part, as follows:

**§ 144. Bias or prejudice of a judge**

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein....

**§ 455. Disqualification of justice, judge or magistrate**

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.[1]

Section 144 requires the party seeking recusal of a judge to file a timely[2] and sufficient affidavit stating "the facts and the reasons for the belief that bias or prejudice exists...." The affidavit must "be accompanied by a certificate of counsel of record stating that it is made in good faith." Defendant's Motion to Recuse is accompanied by an Affidavit by the Defendant and a Certificate of Good Faith signed by one of his attorneys, Harold Bender.[3]

In *Marty's Floor Covering Co. v. GAF Corporation*, 604 F.2d 266 (4th Cir.1979), *quoting United States v. Nehas*, 368 F.Supp. 435, 437 (W.D.Pa.1973), the Fourth Circuit described the usual procedure to be followed under § 144:

"In accordance with the language of the statute, and cases construing it, the following procedure is to be observed. The filing of the affidavit does not itself automatically effect the ouster. Instead the legal sufficiency of the facts alleged (as distinguished from conclusionary assertions) must be passed upon by the target judge. He accepts as true the facts alleged, as on a common law demurrer, and determines merely their legal adequacy. He does not determine the truth

---

**1.** Section 455(b)(1) also requires a judge to recuse himself "[w]here he has a personal bias or prejudiced concerning a party...."

**2.** The timeliness of the Motion to Recuse is not at issue here.

**3.** At the time the Motion to Recuse was filed only Harold Bender was counsel of record.

of the allegations. In fact no one ever passes upon the truthfulness of the allegations. As stated by Judge Yankwich in *Cole v. Loew's Inc.*, 76 F.Supp. 872, 877 (S.D.Cal.1948), 'the truth of the affidavit cannot be adjudicated by the judge involved or anyone else.' If the target judge finds them legally sufficient, then the disqualification is automatically effected. His determination is an interlocutory ruling reviewable on appeal along with other alleged errors in connection with the trial."

Section 455(a) does not require an affidavit or motion. Rather, the Judge must recuse himself if "his impartiality might reasonably be questioned." In *Rice v. McKenzie*, 581 F.2d 1114, 1116–1117 (4th Cir.1978), the Fourth Circuit set out the test to be used in determining whether a judge must recuse himself under § 455(a).

> The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all the circumstances.
>
> \* \* \* \* \* \*
>
> [The question is] whether a reasonable person would have ... a reasonable basis for doubting the judge's impartiality.
>
> \* \* \* \* \* \*
>
> The inquiry begins and ends with a determination whether a reasonable person would have ... a reasonable basis for doubting the judge's impartiality.

This test and standard was reiterated in *United States v. Carmichael*, 726 F.2d 158, 160 (4th Cir.1984): "Every litigant is entitled to be heard by an impartial judge.... The standard to be applied is an objective one, to foster not only actual impartiality but also the appearance of impartiality." [Citations omitted].

This Court will apply the above standard in determining whether Defendant's affida-

vit is sufficient under § 144 or whether § 455(a) requires the Court to recuse itself.[4]

In *Shaw v. Martin*, 733 F.2d 304, 308 (4th Cir.1984) the Fourth Circuit held that:

> Alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). The nature of the bias must be personal rather than judicial. *United States v. Carmichael*, 726 F.2d 158, 160 (4th Cir.1984).

Under either § 144 or § 455 "the alleged bias must be 'personal', as distinguished from judicial in nature.... The point of the distinction is that the bias 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' " *Phillips v. Joint Legislative Com., ETC.*, 637 F.2d 1014, 1019 (5th Cir.1981).

■ Defendant "believes and avers" that the undersigned "has a personal bias against him and the subject matter of this cause." Defendant's Affidavit, p. 1. In his Affidavit, Defendant sets forth three factual allegations in support of his belief that this Court is biased:

> (3) The facts and reasons for the belief that such personal bias and prejudice exist are as follows:
>
> (a) On January 22, 1985, in *United States vs. Wm. C. Johnson*, Case No. C–CR–84–101, during the course of sentencing Mr. Johnson for violation of Federal obscenity laws, said Judge Potter stated that he viewed, "... the pornographic business about like I view drug business." (Page 52—Transcript of said proceedings).

---

**4.** But see *United States v. Phillips*, 637 F.2d 1014, ftnt. 6 (5th Cir.1981) where in comparing §§ 144 and 455 the Court stated: "To the extent that there is a difference, section 455 imposes the stricter standard [on the court]: a movant under section 144 must allege facts to convince a reasonable person that bias exists, ... while under the broader language of section 455, he must show only that a reasonable person 'would harbor doubts about the judge's impartiality....' " [Citations omitted].

(b) On March 25, 1985, in *United States vs. Everette L. Bronson, Jr.,* Case No. C–CR–84–98, during the course of sentencing Mr. Bronson for violation of Federal obscenity laws, said Judge Potter stated: "No Sir. I think these tapes and from what I've read about them, without even looking at them, they are without a doubt some of the worst things I've ever heard of in my life. Perhaps I've led a very sheltered life, but there is no question as to the obscenity. I can't overlook the fact he's engaged in the type of conduct I don't think should be allowed in this country." (Page 40— Transcript of said proceedings).

(c) The within case involves the alleged violation of Federal obscenity laws which is the very conduct Judge Potter made reference to in the statements set forth in Paragraphs 3(a) and (b) herein.

As noted earlier, in ruling on Defendant's Motion to Recuse this Court must accept the above-quoted factual allegations [3(a), (b), (c) ] as true if the Affidavit is timely and technically correct. *Phillips, supra.* This Court "must pass on the legal sufficiency of the affidavit, but [it] may not pass on the truth of the matters alleged." *Id.*

In his Memorandum in Support of Motion to Recuse, Defendant argues, through counsel, that based on this Court's statements as set forth in Defendant's Affidavit, this Court has (1) a personal and extra-judicial bias "against persons charged with the violation of 'anti-pornography laws' "; (2) "expressed a fixed viewpoint on the disposition of the cause of a class of persons of which the Defendant is allegedly a member." Defendant also alleges that this Court's "attitude fails to give due regard to the presumption mandated by the First Amendment. See: *Roaden v. Kentucky,*

*supra.*[5] Here Defendant's affidavit is based on statements made by this Court in two other cases: *United States v. Johnson,* C–CR–84–101; *United States v. Bronson;* C–CR–84–98. While Defendant's factual assertions in his affidavit concerning these two cases are assumed to be true, they are limited quotes that do not reveal the entire context in which the statements were made.

In *Johnson,* the defendant pleaded guilty to violating federal obscenity laws *and he stipulated* that the material in question was obscene under the appropriate legal standard. The statement made by the Court ("I view the pornographic business about like I do drug business.") was made during the sentencing phase. The full context of the Court's statement shows that the Court was referring to the severity with which this Court views obscenity law violations. The full statement made by the Court is as follows:

THE COURT: All right. Thank you, Ms. Stuart. Well, you know, unfortunately, the anti-pornographic laws are just getting started. Mr. Johnson, you may be fortunate or unfortunate—any way you want to look at it—at being the first one up here. I view the pornographic business about like I view drug business. It's people who get into these things purely for their own gain and they don't care what happens to anybody else. Drug people come up here, and a lot of people are shocked, as Mr. Bailey said about Mr. Johnson, but they still do it for profit. I was just looking at these figures. His business suddenly came up from eleven or twelve hundred dollars to three thousand, seven thousand, and then six thousand, and then it dropped back to one thousand after he went out of the business. I can't understand people of this country supporting drug deal-

5. At the hearing Defendant's counsel, Bert Sandler, accused the Court of violating its judicial duty to determine the obscenity of the materials in question in the cases of *United States v. Johnson* and *United States v. Bronson* by accepting Defendants' stipulations, on advice of counsel, that the material in question was obscene under the appropriate legal standard. But see,

*Roaden v. Kentucky,* 413 U.S. 496, 497, 93 S.Ct. 2796, 2797, 37 L.Ed.2d 757 (1972) where the Supreme Court noted that "[s]ince the petitioner conceded the obscenity of the film at trial, that issue is not here before us for discussion." Also, see *United States v. Grassi,* 602 F.2d 1192 (5th Cir.1979).

ers or pornography dealers either one, and I'm glad personally that the administration—and I hope the next administration, whoever it is, will continue to enforce these laws. Now, Mr. Scofield says that he didn't swindle anybody. He's not of a violent nature. Mr. Scofield, people who are not necessarily of a violent nature can commit crimes just like anybody else. People of violent nature, bank robbers in particular, I guess—I don't want to say compassion, because I do feel for some of them because it's a desperate act, a bank robbery. It's a stupid crime, and they get very little out of it. Somebody can embezzle a million dollars and come up here with a white collar and a tie on and expect to get out on probation. Somebody goes in and robs a bank in a desperate act and subjects himself to twenty-five years. Drug dealers and pornographic dealers and so forth, they usually are so-called pillars of the community. I will say that Mr. Johnson is a man who apparently got into this, you may might [sic] accidentally, and I guess it's fortunate for him to be caught when he was because if he hadn't been, he probably would have gotten into organized crime and been ordering these materials and everything else. All right. enough [sic] preaching. It is adjudged that the defendant is committed to the custody of the Attorney General or his authorized representative for a term of three years and fined a sum of $5,000.00. Execution of the term of imprisonment is suspended, and the defendant placed on probation for a period of three years, subject to the following terms and conditions: (1) That he not violate any laws of the State of North Carolina or Federal Government; (2) That he obey all the rules and regulations of the probation department; and, (3), [sic] that he pay the fine in such installments as may be directed by the probation officer. Counts One and Two are merged for purposes of sentencing. [Tr. pp. 52–54].

In *United States v. Bronson,* the statement made by the Court of which the Defendant complains was also made during the sentencing phase of a Defendant who had pleaded guilty *and stipulated,* under the appropriate legal standard, to the obscenity of the material in question. The full context of the statements made by the Court shows that the type of conduct which the Defendant had engaged in, which the Court stated it did not think should be allowed in this country, was a particular type of *criminal* conduct. Again the statements show the seriousness with which this Court views such criminal conduct. Defendant Bronson was not being sentenced by the Court for legally protected conduct but for criminal conduct to which he had pleaded guilty and for which there was a factual basis. The full statement made by the Court is as follows:

THE COURT: Well, Mr. Laughrun, your objection to the pre-sentence report refers to videotapes depicting child pornography. I will disregard that and consider that in the light most favorable to the defendant in sentencing. Now, Mr. Laughrun, everything you have said about this man, of course, is true, I suppose. He has served his country. Apparently he's done some of the same things drug dealers do, although drug dealers make more profit than he's made, but I'm afraid to the deprivation of our society, very severely and very seriously. Apparently he was well on the road to doing even more than he did with the sources of supply, wherever he got those things—I don't know. But in any event, I always hate to see a man that's been a good citizen get in trouble, Mr. Laughrun, but as you know, that happens all the time. There are people up here who've been in trouble all their lives, and there are people up here who have never been in trouble, but they've gotten—committed a crime—and they're going to, of course, have to be sentenced by the Court. All right. We're going to merge Counts Two, Four, Six and Eight for sentencing. On Counts Two, Four— wait. Excuse me. Two and Four and Eight for sentencing. On Counts Two, Four and Eight, the defendant is committed to the custody of the Attorney Gener-

al or his authorized representative for a term of five years. Count No. Six, the defendant is committed to the custody of the Attorney General or his authorized representative for a term of two years, to run consecutively with the sentence imposed in Counts Two, Four and Eight. Now, I will allow him to report to the marshal at his own expense if there is no objection by the Government. All right, Mr. Laughrun, that will be about five or six weeks.

MR. LAUGHRUN: Judge, will you consider suspending the last two years of that sentence?

THE COURT: No, sir. I think these tapes and from what I've read about them, without even looking at them, they are without a doubt some of the worst things I've ever even heard of in my life. Perhaps I've led a very sheltered life, but there is no question as to the obscenity. I can't overlook the fact he's engaged in the type of conduct I don't think should be allowed in this country. He can be notified by the marshal. Be about five weeks.

[Tr. pp. 39–40].

■ That this Court may "personally" view a particular type of crime as more serious than other crimes, does not, without more, give a reasonable man grounds to believe that the Court is personally biased or prejudiced against a defendant. In *United States v. Lackey*, 705 F.2d 446 (4th Cir.1983), *affirmed in part, vacated in part, and remanded*, this Court stated at the time that defendant Chapman entered his plea, "I personally view this type of case as more serious than armed bank robbery." On appeal Defendant Lackey argued that this Court's "alleged prejudice in drug cases deprived him of a fair and impartial trial." *Lackey*, p. 7. Specifically, Defendant Lackey argued that the trial court had abused its discretion in denying his motion for change of venue. The Fourth Circuit, disagreeing with the Defendant held the following:

> Further, this court cannot find an abuse of discretion in the trial court's denial of appellant's motion for a change of venue on the grounds of prejudice. The fact

that the trial court stated that it personally viewed this type of case (distribution of cocaine) as more serious than armed bank robbery, does not raise a presumption of prejudice so as to amount to an abuse of discretion in denying the motion for a change of venue. The fact that a judge views offense A as more serious than offense B does not, without more, create a presumption of prejudice in that judge's handling of a case involving offense A.

*Lackey*, p. 8.

Defense counsel, Harold Bender, who filed the Certificate of Good Faith, should be well aware of the *Lackey* case because, while an Assistant United States Attorney, he prosecuted the case and represented the United States on the appellate brief.

■ A trial judge is not "disqualified from sitting in a case because of an earlier decision, in which he participated, of a similar case involving other parties." *Rice, supra* at 1118. The Fifth Circuit in a holding that the trial judge did not abuse his discretion in refusing to recuse himself noted that:

> It is a district judge's duty to conduct trials, weigh evidence, consider the law, exercise his discretion, and reach decisions in the cases on which he sits. If he understands that a seemingly harsh comment toward a party or an attorney, or a perceived tendency to give severe sentences to some class of offenders, or an aggregate imbalance in victories for plaintiffs or defendants in a particular class of cases may subject him to a train of successful recusal motions in future cases, he may consciously or subconsciously shape his judicial actions in ways unrelated to the merits of the cases before him.

*Phillips, supra* at 1120.

In determining the sufficiency of the § 144 affidavit in *United States v. Nehas*, 368 F.Supp. 435, 437 (W.D.Pa.1973), the district court noted that § 144 "specifies that 'personal' bias is the sole ground of disqualification." The District Court further noted that:

This involves antagonism or animosity toward the affiant, or favoritism towards the adverse party. *Berger v. United States,* 255 U.S. 22, 32, 41 S.Ct. 230, 65 L.Ed. 481 (1921); *Cole v. Loew's Inc.,* 76 F.Supp. 872, 877 (S.D.Cal.1948). Personal bias is to be distinguished from "judicial" bias, and does not include views based upon matters arising during the course of the litigation or upon general attitudes common to the public generally. *United States v. Gilboy,* 162 F.Supp. 384, 394 (M.D.Pa.1958); *Knapp v. Kinsey,* 232 F.2d 458, 466 (C.A. 6, 1956); *Cole v. Loew's Inc.,* 76 F.Supp. 872, 877 (S.D.Cal.1948).

In particular, views relating to legal questions, even strongly-held views in favor of law-enforcement, do not amount to personal bias. *Knapp, supra,* 232 F.2d at 466; *United States v. Valenti,* 120 F.Supp. 80, 85–86 (D.N.J.1954); *Baskin v. Brown,* 174 F.2d 391, 394 (C.A. 4, 1949); *Cole v. Loew's Inc.,* 76 F.Supp. 872, 876–77 (S.D.Cal.1948).

Likewise, the severity of a sentence (within the statutory spectrum) is no indication of personal bias. *Knapp, supra,* 232 F.2d at 466; *Calvaresi v. United States,* 216 F.2d 891, 900 (C.A. 10, 1954).

368 F.Supp. at 437 [footnote omitted].

Applying the above-quoted principles to the case at bar, it seems clear that the allegations in the Defendant's Affidavit "do not amount to a sufficient description of personal bias. At most, nothing but 'judicial bias' or zeal for enforcement of enacted law and policies of Congress embodied therein is established." *Nehas, supra,* at 437–38. Under § 144 this is not enough.

The statements made by the Court in the *Johnson* and *Bronson* cases were not in reference to this Defendant who is presumed innocent until proven guilty beyond a reasonable doubt. One can search the *Johnson* and *Bronson* transcripts in vain without finding a reference to this Defendant by name or otherwise. Thus, a reasonable man would not have a reasonable basis for doubting this Court's impartiality toward this Defendant personally.

Nor do this Court's statements give a reasonable man a reasonable basis for doubting this Court's impartiality toward persons, like the Defendant, who have been *charged* with "anti-pornography laws." The statements made by the Court were at the sentencing phase of two defendants who had pleaded guilty. Thus, by their pleas of guilty, the acceptance of the pleas and the finding of a factual basis for the pleas, the defendants were no longer merely charged with violations of obscenity laws but stood convicted of a violation of those laws and as such had lost their presumption of innocence. Once Defendants *stipulated* to the obscenity of the material in question the presumption mandated by the First Amendment, which Defendant argues this Court fails to give due regard, disappeared.

As noted earlier, in his Memorandum Defendant states that this Court "has expressed a fixed viewpoint on the disposition of the cause of a class of persons of which the Defendant is allegedly a member." Defendant does not elaborate on what is meant by "a fixed viewpoint on the disposition of the cause." In both the *Johnson* and the *Bronson* cases the defendants pleaded guilty. They certainly did not receive fixed sentences. Defendant Johnson was placed on probation and Bronson was originally sentenced to seven years in prison which was later reduced, in effect, to five years imprisonment.

■ Finally in his Memorandum, Defendant argues that "the Court has been prejudiced against this Defendant by the statements made by Assistant United States Attorney Debra Stuart." Specifically, Defendant complains of the following statement made by Ms. Stuart:

There is a difference in Mr. Johnson as a person and other people that will no doubt at some point come before this Court in the area of obscenity and pornography, in that he is not an organized crime figure. There is no indication that his commercial operation of the duplication of pornographic materials had anything to do with organized crime figures

or Mafioso or anything of that nature, and he has certainly made every attempt to do anything that he has been asked to do by way of cooperation.

(*Johnson* Tr. 51–52).

In his Memorandum Defendant asserts that "[c]learly, reference was being made to this Defendant. This unfounded and reckless statement has so 'poisoned' the mind of the Judge that it would be difficult, if not impossible, to receive a fair trial." It is Defendant's above-quoted statement that is unfounded and reckless; not Ms. Stuart's. No where has Ms. Stuart mentioned the Defendant by name or otherwise. The record in this case shows that Defendant was not indicted until June 12, 1985. Defendant Johnson, at whose sentencing hearing Ms. Stuart made the statement, was sentenced on January 22, 1985—almost five months prior to Defendant being indicted. While not set forth in Defendant's Affidavit this Court considered this contention because, under § 455 this Court has a duty to recuse itself, absent any motion, in any proceeding in which the Court's "impartiality might reasonably be questioned."

In summary, Defendant's Affidavit is insufficient under § 144. Defendant has not set forth any matter in his Affidavit, Memorandum or otherwise, which on the basis of all the circumstances would give a reasonable person a reasonable basis for doubting this Court's impartiality.

IT IS, THEREFORE, ORDERED, as stated in open court, that Defendant's Motion to Recuse is DENIED.

The Clerk is directed to certify copies of this Order to defense counsel and the United States Attorney.