NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

HONAKER MILLS, DIVISION OF TOP
FORM MILLS, INC., Respondent,

In re SANMARK–STARDUST,
INC., Petitioner.

In the case of NATIONAL LABOR
RELATIONS BOARD, Respondent,

v.

HONAKER MILLS, DIVISION OF TOP
FORM MILLS, INC., Petitioner.

Nos. 85–1267, 85–1359.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 6, 1984.

Decided Feb. 28, 1986.

Gary W. Wright (Philip J. Lawson, Wimberly, Lawson & Cobb, Morristown, Tenn., on brief), for petitioner Sanmark-Stardust, Inc.

Evan J. Spelfogel (Patricia Costello Slovak, Burns, Summit, Rovins & Feldesman, New York City, on brief), for petitioner Top Form Mills, Inc.

Peter Winkler (Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel; Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., on brief), for N.L.R.B.

Before WIDENER and SNEEDEN, Circuit Judges, and MICHAEL, District Judge for the Western District of Virginia, sitting by designation.

WIDENER, Circuit Judge:

These cases concern the National Labor Relations Board's (NLRB or Board) petition for enforcement of its bargaining order issued against Honaker Mills, Division of Top Form Mills, Inc. (Top Form) on December 14, 1984. Sanmark-Stardust, Inc. (Sanmark), which purchased the Top Form facility that was the subject of the NLRB's order, at Honaker, Virginia on December 29, 1983, filed its petition for review of that NLRB order, and the two cases were consolidated for consideration. We also consider a subsidiary issue of whether the NLRB's order, should we determine it was properly issued, is enforceable against Top Form inasmuch as Top Form has sold its Honaker Mills facility in Honaker, Virginia to Sanmark, and currently retains no interest in or control over the labor practices at said facility. Top Form requests that should we determine that the order is not enforceable against Top Form, we should release Top Form from any responsibility to appear in connection with any further proceedings in this matter. We find no merit in either Sanmark's or Top Form's contentions, and enforce the Board's order.

On June 21, 1978, the International Ladies' Garment Workers' Union, AFL–CIO (Union), filed a petition with the NLRB seeking an election among the production and maintenance employees that Top Form employed at its Honaker, Virginia facility. A secret ballot election was conducted on August 8, 1978 which the Union won by a vote of 124 to 72.

Top Form filed timely objections to the election, alleging that the Union had engaged in various forms of pre-election misconduct. After the usual proceedings, the Board overruled Top Form's objections and certified the Union as the collective bargaining representative for certain of the employees of the Honaker, Virginia facility.

On June 20, 1979, the Union requested that Top Form commence collective bargaining. Top Form did not immediately respond to this request, except to state that it had referred the Union's request to "appropriate Company officials and Company Counsel." On July 24, 1979, the Union began a strike against Top Form that lasted until November of that year.

On August 15, 1979, the Union filed unfair labor practice charges against Top Form, alleging that Top Form had unlawfully refused to bargain with the Union. On the basis of these charges, the NLRB's Regional Director issued a complaint against Top Form on September 27, 1979. On November 26, 1979, the General Counsel for the NLRB moved for summary judgment on the complaint, a motion that the NLRB denied on March 6, 1980, finding that there were issues of fact that required development at a hearing before an Administrative Law Judge (ALJ). In particular, the NLRB concluded that the ALJ should hear evidence as to the nature of the strike and as to whether the Union committed sufficient violence during the strike so as to justify Top Form's refusal to bargain with the Union as a certified bargaining representative pursuant to the doctrine established in *Laura Modes Co.*, 144 NLRB 1592 (1963). As a result of the Board's denial of the General Counsel's motion for summary judgment, hearings were held before an ALJ concerning the unfair labor practices complaint on August 21, 1980 and October 6–9, 1980.

On May 12, 1981, the ALJ issued his findings of fact and conclusions of law in which he found that Top Form had violated Section 8(a) of the statute by refusing to bargain with the Union. In so finding, the judge expressly rejected Top Form's strike violence defense. The ALJ refused to consider Top Form's objections to the Union's alleged pre-election misconduct.

In December 1983, Top Form sold its plant facilities at Honaker, Virginia to Sanmark. Subsequently, on December 14, 1984, the Board issued its Decision and Order affirming the ALJ's rulings in the hearing on the unfair labor practice charges. The Board's order required Top Form and its successors and assigns to cease and desist from refusing to bargain with the Union. The order also requires Top Form to bargain with the Union upon request, to embody any understanding that is reached in a signed agreement, and to post an appropriate notice. It is this Decision and Order that is presently before us for review.

In its petition for review, Sanmark raises three grounds for denial of the NLRB's petition for enforcement. In addition, Top Form argues that the order should not be enforced because the order is addressed to Top Form and Top Form no longer has any interest in or control over the labor practices at the facility in question. After determining the propriety of the order in general, we address its enforceability against Top Form in particular.

Sanmark first argues that the order should not be enforced because it is the result of an unfair hearing before a biased tribunal. Specifically, Sanmark makes six allegations of partiality in the hearing:

1. that the ALJ expressed his doubts about the viability of Top Form's primary defense to the unfair labor practice charge prior to the hearing;

2. that the ALJ assumed the role of advocate in actively participating in the

questioning of witnesses during the hearing;

3.  that the ALJ refused to credit uncontradicted testimony by witnesses for Top Form;

4.  that the ALJ precluded Top Form from eliciting testimony helpful to its defense;

5.  that the ALJ made certain disparaging remarks to counsel for Top Form during the course of the hearing; and,

6.  that the ALJ disregarded incriminating conduct that the Union committed during the course of the strike when he considered the merits of Top Form's strike misconduct defense.

Because of the serious nature of an allegation of bias on the part of a decisionmaker in such a proceeding, *see NLRB v. Phelps*, 136 F.2d 562, 563–64 (5th Cir.1943), we address in some detail each of Sanmark's allegations of bias. *See Tele-Trip v. NLRB*, 340 F.2d 575, 581 (4th Cir.1965).

In support of its first allegation of conduct evidencing bias, Sanmark points to a remark that the ALJ allegedly made during an off-the-record, pretrial conference with Top Form's attorneys.[1] To establish that the ALJ actually made this remark, Sanmark relies on an affidavit by Top Form counsel in which counsel avers that the ALJ had stated during the pretrial conference that the *Laura Modes* defense, the defense that Top Form intended to rely upon during the hearing, had never been "applied or sustained in the context of a post-certification Section 8(a)(5) strike," and that as a result the ALJ did not think that Top Form had any chance of success with that defense.

■ Sanmark does not dispute the accuracy of the ALJ's description of the caselaw that has developed regarding the *Laura Modes* defense. Rather, Sanmark contends that the ALJ's apparently correct statement of the law evidenced an inherent prejudice toward Top Form's defense to the unfair labor practice charges. We do not believe that the ALJ's remark reflected anything more than the familiarity with governing caselaw that was required of him for the effective performance of his duties, and reject Sanmark's contention that the remark indicated that the ALJ was personally rather than judicially prejudiced against Top Form's reliance upon the *Laura Modes* defense. A judge's remarks that constitute mere expressions on a point of law are not sufficient to show personal bias or prejudice. *Sakellar v. Lockheed Missiles and Space Co.*, 765 F.2d 1453, 1457 (9th Cir.1985); *see also United States v. Carmichael*, 726 F.2d 158, 161 (4th Cir. 1981) (judge's remarks do not exhibit bias if they merely reflect attitude derived from experience on the bench).

■ Sanmark next alleges that the ALJ exhibited prejudice and assumed the role of advocate by his active participation in the examination of witnesses during the hearing. The NLRB's rules expressly authorize ALJs presiding in hearings concerning unfair labor practice charges to "call, examine, and cross-examine witnesses and to introduce into the record documentary or other evidence." 29 C.F.R. § 102.35(k) (1985); *see also* 29 C.F.R. § 102.64(a) (1985) (stating it is duty of hearing officer in certification proceedings to inquire fully into all matters and issues necessary to obtain full and complete record). In this case, the questioning to which Sanmark objects does not necessarily indicate more than that in response to certain witnesses' broad testimony, specifically that of Mr. Ireson, Mrs. Gilbert, Mr. Phillips, and Miss Perkins, all witnesses for Top Form, the ALJ attempted to obtain more specific statements from the witnesses to determine the weight that he should assign to their testimony. An examination of the questioning of which Sanmark complains reveals that the ALJ, again, was not neces-

---

**1.**  We assume for purposes of argument that the ALJ did, in fact, make the statement attributed to him by counsel for Top Form. We note, however, the problem that allegations regarding off-the-record errors raise for appellate courts on review. We admonish counsel to follow proper procedures in the future for making up the record and preserving any such error as claimed here. *See Canal Elec. Co.*, 245 NLRB 1090, 1090 n. 2 (1979).

sarily doing more than clarifying the record, not slanting it. We find no excessive questioning nor abuse of discretion. We find that the questioning by the ALJ of which Sanmark complains did not exhibit bias or prejudice. *See NLRB v. Superior Sales, Inc.,* 366 F.2d 229, 233 (8th Cir.1966).

■ Sanmark next contends that the ALJ refused to credit uncontradicted testimony by witnesses for Top Form. A review of the ALJ's findings of fact, however, indicates that the ALJ did not exhibit bias or prejudice in his credibility determinations. In the first place, the ALJ did, on certain occasions, credit the testimony of witnesses for Top Form, in particular, that of Charlotte Foleno and Kathleen Harris regarding an incident during the strike in which one of the strikers allegedly threw nails under the tires of the Foleno automobile. Secondly, in those instances in which the ALJ did discredit the testimony of witnesses for Top Form, despite the absence of contradicting testimony, he gave specific reasons for rejecting the testimony. For example, he discounted Ireson's testimony on the basis of perceived logical and factual inconsistencies in the witness' statements, a lack of corroboration, and the overall demeanor of the witness. The specificity with which the ALJ made his credibility determinations, combined with his willingness to credit the testimony of some Top Form witnesses, tend to negate the charge of extrajudicial bias. As this court and other courts have reiterated, " 'the alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' " *United States v. Crowell,* 586 F.2d 1020, 1027 (4th Cir.1978), *cert. denied,* 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979) (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966) ). Because the record does not establish that the ALJ's credibility determinations were based on anything other than his participation in this case, we reject Sanmark's allegation of bias in this regard. *NLRB v. Air Prods. & Chems.,*

*Inc.,* 717 F.2d 141, 145 (4th Cir.1983) (absent exceptional circumstances, ALJ's credibility determinations when adopted by the Board are to be adopted by reviewing court).

■ Sanmark next contends that the ALJ demonstrated bias by refusing to allow Top Form to elicit testimony in support of its defense. The record, however, indicates that the actions by the ALJ of which Sanmark complains were merely evidentiary rulings that the ALJ made based on his understanding of the applicable law. Even assuming that these rulings were incorrect, Sanmark may not establish a sufficient case of bias merely by questioning the correctness of an ALJ's evidentiary rulings. *See Hedison Mfg. v. NLRB,* 643 F.2d 32, 35 (1st Cir.1981). Rather, Sanmark must make a showing of bias stemming from sources outside the decisional process. *See Morris v. City of Danville,* 744 F.2d 1041, 1045 (4th Cir.1983). This, Sanmark has failed to do. Consequently, we reject this contention of bias also.

■ Sanmark further contends that the ALJ exhibited bias through various allegedly intemperate and derisive remarks directed at counsel for Top Form. The facts that Sanmark relies upon to establish the ALJ's prejudice in this regard, however, simply do not support the broad generalizations that Sanmark makes about them. For example, Sanmark vehemently objects to the ALJ's use of the term "scab" during his questioning of a Union witness. Prior to using the term, however, the ALJ made it very clear that he was only using the term because the witness knew what the word meant. Moreover, the ALJ only used the term after the witness herself had used it several times, and only used it during the questioning of that one witness. In these circumstances, we do not believe that the ALJ's use of the term will support the broad allegations of prejudice that Sanmark makes. *See Shaw v. Martin,* 733 F.2d 304, 308 (4th Cir.1983). Similarly, other remarks of which Sanmark complains are at least innocuous, and at most injudi-

cious. They do not rise to the level necessary to support the serious charge of judicial bias.

■ Finally, with respect to Sanmark's contentions concerning the ALJ's bias, Sanmark contends that the ALJ exhibited prejudice by disregarding and discounting incriminating conduct on behalf of the Union, which, if properly credited, would have established Top Form's *Laura Modes* defense. On the contrary, although, as Sanmark correctly points out, the ALJ undertook questionable examination of a witness apparently with respect to the reasons for Union violence, the ALJ did not discount or disregard the seriousness of the violence that he concluded had been established at the hearing. Rather, the ALJ concluded that despite the seriousness of it, which he castigated, the violence did not rise to the level required to support the *Laura Modes* defense. Although Sanmark may disagree with the ALJ's conclusion in this regard, that disagreement alone does not establish bias or prejudice sufficient to· warrant a conclusion that the hearing below was fatally marred by prejudice on the part of the presiding ALJ.

In conclusion, we are of opinion that the record does not show indication of bias on the part of the ALJ that would warrant a refusal to enforce the Board's order on that ground. Consequently, we reject Sanmark's contention that the order should not be enforced because it was the result of an unfair hearing before a biased tribunal.

■ Sanmark next raises as a ground for denying enforcement to the Board's order the contention that the Board erred in its conclusion that the Union's strike related misconduct did not preclude the issuance of a bargaining order. We review this contention under a substantial evidence standard. Thus, the question before us is whether there was substantial evidence before the ALJ to substantiate his finding, which the Board adopted, that the strike misconduct that occurred did not rise to the level sufficient to warrant *Laura Modes* sanctions. We conclude that there was. Most of the evidence that Top Form introduced in the hearing below consisted of evidence of picket line taunts and jeers. Of the more serious misconduct that allegedly occurred, certain incidents were established, and certain incidents were not because not presented through credible evidence. Other serious incidents which occurred were not connected to the Union by sufficient evidence. Given the status of the administrative record, we conclude that there was substantial evidence to support the Board's rejection of Top Form's *Laura Modes* defense to the Union's unfair labor practice charges.

■ As a third ground for denying enforcement to the Board's order, Sanmark contends that the Board erred in upholding the ALJ's dismissal of Top Form's allegations concerning the Union's pre-election acts in his conduct of the post-election hearing. As noted above, Top Form previously litigated the propriety of the election, culminating with the order of the NLRB. The Board overruled Top Form's objections to the election in an order dated June 6, 1979, and certified the Union as the unit's bargaining representative. Later, after the Regional Director had issued a complaint based on the Union's refusal to bargain charge that forms the basis for the order presented for enforcement to this court, the NLRB's General Counsel filed with the Board a motion for summary judgment on that complaint, contending, in part, that Top Form was seeking to relitigate in the unfair labor practice proceedings issues previously decided in the election proceedings. The Board denied the General Counsel's motion, noting that Top Form had raised, in the unfair labor practice proceedings, issues of fact, including the nature of the strike and whether violence was, in fact, committed, which would best be resolved at hearing before an ALJ. Although the General Counsel had asked for at least partial summary judgment on Top Form's pre-election allegations, the Board did not mention this request in its order. Instead, the Board simply denied the General Counsel's motion in its entirety.

As a result of this, Sanmark claims ambiguity in the Board's order denying summary judgment on the unfair labor practice charges. Top Form, the argument goes, raised its pre-election allegations in its answer to the unfair labor practice charges. Thus, it contends that the ALJ presiding over the unfair labor practice proceedings erred in refusing to permit Top Form to relitigate those contentions in the unfair labor practice proceedings. The ALJ reasoned that absent a showing of previously unavailable or newly discovered evidence that would warrant the relitigation of issues previously decided by the Board, Top Form was precluded from raising its pre-election allegations in the subsequent administrative forum.

It is of some consequence to note at this point that Sanmark does not separately allege that the Board's previous decision concerning Top Form's objections to the Union election was incorrect. The objection is essentially procedural rather than substantive. Sanmark only alleges that the ALJ erroneously interpreted the Board's order denying summary judgment to the General Counsel on the unfair labor practice charge, by which Sanmark alleges the Board implicitly recognized Top Form's right to a retrial on its pre-election allegations.

We find this argument to be without merit. The ALJ interpreted the Board's order in the light of existing law, as he should have done. The Board's regulations explicitly state that a party may not reraise in a subsequent unfair labor practice administrative proceeding issues that the Board has previously decided in a prior representation proceeding. *See* 29 C.F.R. § 102.67(f) (1985); *see also Pittsburgh Place Glass v. NLRB*, 313 U.S. 146, 162, 61 S.Ct. 908, 917, 85 L.Ed. 1251 (1941). Indeed, to initiate any further review of such allegations in the usual case, a party must wait and raise them in the appropriate judicial forum during an action contesting the enforcement of an ensuing bargaining order. *See AFL v. NLRB*, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940); *Newport News Shipbuilding & Drydock v. NLRB*,

738 F.2d 1404, 1407 n. 3 (4th Cir.1984). The ALJ correctly interpreted the Board's order for an evidentiary hearing in the light of this well established principle, and, therefore, committed no error in dismissing Top Form's allegations of pre-election misconduct in the subsequent unfair labor practices proceeding.

■ Having considered each of Sanmark's allegations concerning the propriety of the Board's order and rejected each one, we conclude that the Board's order is enforceable and should be enforced absent some other bar to its enforcement. Top Form argues that its sale of the Honaker, Virginia facility to Sanmark, an entity unrelated to Top Form in any way, constitutes such a bar. We disagree.

The Board conceded in oral argument that should Top Form's allegations concerning the subsequent sale of the Honaker facility prove correct, then the Board cannot enforce its order against Top Form. The order, however, is directed to Top Form and its successors and assigns. Consequently, the order may still be enforceable against Sanmark should the Board determine in a subsequent proceeding that Sanmark is indeed a successor to Top Form. We decline to engage in fact finding to determine the accuracy of Top Form's allegations concerning Sanmark's successorship, and because Sanmark, understandably, will not admit its successorship, we do not release Top Form from further proceedings with regard to the order in question. Because the Board has conceded in oral argument, however, that it will not seek to enforce the order against Top Form once it has been established in an appropriate proceeding that Top Form no longer has any relation to the facility in question, Top Form may rest assured that the Board will not require Top Form to perform a futile act.

Accordingly, the order of the Board as issued is

ENFORCED.

The petition for review is

DENIED.