**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                        No. 96-4430

SHIRLEY JONES,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                        No. 96-4434

SHEILA JONES,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                        No. 96-4437

ELLA JONES,
Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CR-95-19)

Argued: January 31, 1997

Decided: March 21, 1997

Before MURNAGHAN, NIEMEYER, and MOTZ,
Circuit Judges.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas William Kupec, MICHAEL & KUPEC, Clarksburg, West Virginia; Stephen Sean Murphy, Morgantown, West Virginia, for Appellants. William D. Wilmoth, United States Attorney, Wheeling, West Virginia, for Appellee. **ON BRIEF:** Patricia H. Stiller, Morgantown, West Virginia, for Appellant Shirley Jones. Thomas O. Mucklow, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Shirley Jones, Ella Jones, and Sheila Jones of distribution and sale of crack cocaine and related food stamp fraud. They appeal, asserting several trial and pre-trial errors. Finding no reversible error, we affirm.

I.

Shirley, Ella, and Sheila Jones each sold crack cocaine to Veronica ("Sissy") Jones. Ella Jones was Sissy's aunt and the source of all the drugs at issue here; Shirley and Sheila Jones were Sissy's cousins. At the time of the sales, Sissy acted as a confidential informant for the local police department, which provided her equipment to tape record the sales. Those tapes and Sissy's testimony constituted most of the evidence at trial.

In the face of vigorous cross-examination by defense counsel on her drug habits, her propensity for lying, and her statements in church and to her mother that she had not bought the drugs from her relatives, Sissy affirmed that she bought cocaine from Ella and Sheila in exchange for food stamps and from Shirley for cash. Sissy emphatically asserted that "I am not lying myself out of this." "I am being honest to everyone here," she continued, and "[n]o one put nothing in my mouth to say such and so to no one." She explained that "[t]hey already called me a snitch and everything at home. . . . They don't want them to go to jail." Defense counsel specifically explored the circumstances under which Sissy had become an informant: police had picked her up for prostitution, and had told her she had the choice of going to prison or assisting them in drug enforcement efforts. When she agreed to cooperate she was not charged with the prostitution offense.

After the jury had convicted each of the defendants, Sissy recanted. The district court, nevertheless, refused to grant a new trial. This appeal followed.

II.

Defendants' principal claim on appeal is that Sissy's recantation required a new trial.

Shortly after trial when defense lawyers learned that Sissy had admitted to lying at the trial, they sent a private investigator to Sissy's home to videotape her recantation. Sissy asked for a lawyer, but the investigator told her not to worry, the interview would only help her; he also suggested that the police had acted wrongly in enlisting her as an informant. Defense counsel submitted the resulting videotape to the district court.

This new information prompted a hearing, during which the defense called Sissy as a witness. Court-appointed defense counsel advised Sissy to exercise her Fifth Amendment rights and not admit to perjury. Except for responding "No" when asked whether she had purchased drugs from Ella, she refused to answer any questions that contradicted her trial testimony. But Sissy's pastor (her uncle by marriage) testified that Sissy had confessed during an open church

service

3

to lying during the trial. After a detailed analysis, the court determined that Sissy's trial testimony had been truthful, and the recantation coerced by Sissy's family. The court therefore denied the defense motion for a new trial.

Two months later, the court received an audio tape that Sissy had made to corroborate the earlier videotaped recantation. The court held another evidentiary hearing at which Sissy testified that she had never purchased drugs from any of the three defendants. She also testified that she had taken crack cocaine the morning before her appearance at trial. Sissy explained that she had felt coerced by police officers to act as an informant and to attempt to purchase drugs from her relatives. She admitted, however, that she never informed the officers that she was not telling the truth about the taped encounters. Finally, she said her family had not exerted any pressure on her regarding the trial.

The district court found that the recantation was substantive, (not impeaching), material evidence, which defendants, exercising reasonable diligence, could not have produced at trial and that, if true, would probably result in an acquittal. However, after weighing all the evidence, the court was "convinced as the fact finder that [the later] testimony is not credible and that the testimony at trial was credible and, therefore, there is nothing before this court that has convinced it that it should set aside the conviction of these three defendants and order a new trial in the case."

We review the lower court's refusal to grant a new trial for abuse of discretion. United States v. Bynum, 3 F.3d 769, 773 (4th Cir. 1993). The test in this circuit operates at two levels. First, there is a general test applicable to all types of newly-discovered evidence. "[A] motion for a new trial should be granted only if (1) the evidence is newly discovered, (2) the movant exercised due diligence in discovering the

evidence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to the issues, and (5) the evidence would probably result in an acquittal at a new trial." Id. at 774. The district court's findings indicate that Sissy's new testimony, if true, satisfied all of these requirements.

However, when the newly-discovered evidence is a witness' recantation, the court must apply an additional test."[A] new trial should

4

be granted when: (a) [t]he court is reasonably well satisfied that the testimony given by a material witness is false[;] (b) [t]hat without it the jury _might_ have reached a different conclusion (emphasis in origi-nal)[; and] (c) [t]hat the party seeking the new trial was taken by sur-prise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial." United States v. Wallace, 528 F.2d 863, 866 (4th Cir. 1976) (citing Larrison v. United States, 24 F.2d 82, 87-88 (7th Cir. 1928)); United States v. Carmichael, 726 F.2d 158 (4th Cir. 1984) (relying on Wallace fac-tors). So long as trial testimony was true, a later recantation cannot justify a new trial.

The trial court made extensive comparisons of Sissy's differing statements, meticulously analyzing her possible motivations and her demeanor during her various appearances in court. Cf. United States v. Carmichael, 726 F.2d at 159-60 (upholding district court finding of false recantation where lower court made detailed review of credi-bility factors). Ultimately, the court found Sissy's recantation not to be credible. "Findings of the district court made on a motion for a new trial based on newly discovered evidence should not be disturbed except for most extraordinary circumstances and unless it clearly appears they are not supported by any evidence." Carmichael, 726 F.2d at 160. Here the trial court's findings that Sissy gave credible testimony at trial and not afterwards were supported by substantial evidence. Because "[t]he failure to meet any of the [Wallace] require-ments is fatal," id. at 159, the court properly refused to grant a new trial.

III.

Shirley Jones contends that the district court erred in denying her motion for severance. She relies on the fact that there was no tape recording (the tape ran out) of the only crime for which she was charged or convicted -- sale of crack to Sissy-- and that this sale took place almost a month before most of the other charges in the indictment and, unlike the other sales, was for cash and not food stamps.

Defendants may only be joined in an indictment "if they are alleged

to have participated in the same act or transaction or in the same

series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). In United States v. Whitehead , 539 F.2d 1023 (4th Cir. 1976), we held that "[w]here the only nexus between two defendants joined for trial is their participation in similar offenses, on different dates, with a common third defendant, the `same transaction' or `series of transactions' test of Rule 8(b) is not satisfied and joinder is impermissible." Id. at 1026. Similarly, in United States v. Chinchic, 655 F.2d 547 (4th Cir. 1981), we concluded that the trial of two defendants should have been severed when the evidence indicated that one defendant participated in a robbery with a certain group of individuals and the other defendant participated in a different robbery with that same group of individuals. See also United States v. Lane, 474 U.S. 438, 450 (1986); Schaffer v. United States, 362 U.S. 511 (1960).

To join defendants in an indictment, the Government need not "show that each defendant participated in every act or transaction in the series," or charge each defendant in each count. United States v. Santoni, 585 F.2d 667, 673 (4th Cir. 1978). However, it must provide evidence that all the drug sales were "so interconnected in time, place and manner as to constitute a common scheme or plan." Id. The government failed to do so here. Accordingly, the district court erred in refusing to grant Shirley's motion for severance. However, our finding of misjoinder is subject to harmless error analysis. Lane, 474 U.S. at 449. Shirley asserts that the "spillover effect" of the evidence against her co-defendants prejudiced her.**1**

"When there are few defendants and the trial court is aware of the potential for prejudice, `the risk of transference of guilt over the border of admissibility [may be] reduced to the minimum' by carefully crafted limiting instructions with a strict charge to consider the guilt or innocence of each defendant independently. We cannot necessarily `assume that the jury misunderstood or disobeyed' such instructions." Lane, 474 U.S. at 450 n.13 (alteration in original) (citations omitted).

_____

**1** Shirley also claims that if Ella had not been simultaneously facing
food stamp fraud charges, Ella would have testified that she never sold
drugs to Shirley. However Shirley never made this claim in her motion
for severance. Accordingly, it can hardly provide a basis for concluding
that the denial of that motion was reversible error.

6

Here the district court carefully instructed the jury to examine the evidence against each defendant individually. The court emphasized that "you must weigh the evidence as to each defendant separately, and you may only find an individual defendant guilty of an offense . . . if the evidence presented with regard to said defendant establishes guilt beyond a reasonable doubt. You are not to infer that a particular defendant is guilty of an offense as charged merely because you believe one or more of the other defendants is guilty of a criminal offense." Moreover, the tapes used against Ella and Sheila were neither clear nor explicit--the jury relied heavily on the testimony of Sissy Jones. Therefore, the admission of the tape recorded evidence against the other defendants did not have a "substantial and injurious effect" on Shirley's conviction. See Lane, 474 U.S. at 449. The error in refusing to grant the severance motion was harmless.

IV.

Defendants' remaining arguments are meritless.

First, they assert that the Government's failure to provide them requested information regarding Sissy's medical treatment constituted reversible error. As defendants knew, Sissy suffered from a seizure disorder that required her to take several medications; she had also been hospitalized because of her addiction to crack cocaine. Suspecting Sissy was the Government's informant, defendants requested her "medicinal and mental records." Although the Government never provided them, defendants obtained the records on their own initiative before Sissy testified. Defendants assert that the Government's failure to produce the records violated their rights under Brady v. Maryland, 373 U.S. 83, 87 (1963), and Giglio v. United States, 405 U.S. 150, 154 (1972). To prevail on such claims, a defendant must demonstrate that "had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Hoyte, 51 F.3d at 1242 (citing United States v. Bagley, 473 U.S. 667, 682 (1985)).

Here, the defense obtained the records at the beginning of trial and cross-examined Sissy extensively on her drug abuse and psychiatric

problems. It is thus impossible to conclude that the Government's failure to disclose the records meant that the "result of the proceeding

7

would have been different." Although defendants claim that they were
prejudiced because they did not obtain the records earlier, that claim
must be rejected in view of the fact that the defendants did receive the
records before Sissy testified and effectively cross-examined Sissy
regarding the records' content and accuracy.[2]

Finally, defendants assert that the use of transcripts of the taped
meeting during trial was error. They claim that the tapes were unintel-
ligible and so the jury treated the transcripts themselves as evidence.
The decision "to allow the use of transcripts to aid in the presentation
of tape recorded evidence is within the district court's sound discre-
tion." United States v. Collazo, 732 F.2d 1200, 1203 (4th Cir. 1984).
In Collazo, we found that "repeated cautionary instructions cured any
prejudice that might have resulted from discrepancies between tape
and transcript." See also United States v. Capers, 61 F.3d 1100, 1106
(4th Cir. 1995) (finding government transcript allowable as aid to tape
when cross-examination possible, defense could have submitted their
own version, and court gave limiting instruction). Here, the court
repeatedly instructed the jury to rely on the tapes, not the transcripts.
The defense was permitted to cross-examine government witnesses on
potential inaccuracies in transcription. In light of the standard set in
Collazo and Capers, the district court did not abuse its discretion in
allowing the government to use the transcripts.

AFFIRMED

_____

[2] Defendants' objection to the government's failure to deliver tran-
scripts of the taped meetings until four days prior to trial is, as the district
court found, meritless for similar reasons.