**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Cecil Leon RAMSEY,
Defendant-Appellant.**

**No. 86–1050.**

United States Court of Appeals,
Tenth Circuit.

Oct. 2, 1986.

Ed Edmondson, Muskogee, Okl. (Rob L. Pyron, Seminole, Okl., with him on brief), for defendant-appellant.

Roger Hilfiger, U.S. Atty., E.D. Okl., Muskogee, Okl., for plaintiff-appellee.

Before McKAY, SEYMOUR and MOORE, Circuit Judges.

SEYMOUR, Circuit Judge.

This is the third time this court has considered Cecil Leon Ramsey's efforts to obtain a new trial on the basis of recanted testimony. The trial court denied his motion for new trial. We affirm.

In *United States v. Ramsey,* 726 F.2d 601 (10th Cir.1984) (*Ramsey I*), Ramsey unsuccessfully moved for a new trial on the basis of an affidavit by Floyd Jackson, a primary prosecution witness, in which Jackson recanted his trial testimony implicating Ramsey in the crime. We vacated the district court's denial of the motion and remanded the case for fact findings on the credibility of Jackson's recantation. On remand, the district court held a hearing at which Jackson repudiated his recanting affidavit and testified that his trial testimony was true. Randall Johnson, a witness for the prosecution at the original trial who had corroborated Jackson's trial testimony, also testified at this hearing that his trial testimony was true. The district court again denied Ramsey's new trial motion and we affirmed on appeal. *See United States v. Ramsey,* 761 F.2d 603 (10th Cir. 1985) (*Ramsey II*), *cert. denied,* — U.S. ——, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986).

In the instant case, Ramsey filed a motion for new trial based primarily on statements made by witness Randall Johnson to S.G. Everett, in which Johnson recanted his trial testimony that had implicated Ramsey in the crime. Following a hearing at which Johnson testified that his trial testimony was false, the court denied the new trial motion.[1]

Although the facts are set out in *Ramsey I* and *Ramsey II,* we briefly repeat them here to provide a framework for our

---

**1.** Ramsey's brief on appeal contains yet another affidavit by Floyd Jackson in which Jackson states, contrary to his testimony at trial and at the first new trial hearing, that Ramsey had nothing to do with the crime. This document has not been presented to the district court and is not properly before us.

consideration of this appeal. Ramsey was convicted of conspiracy to destroy and destruction of a building by means of an explosive, in violation of 18 U.S.C. §§ 2, 371, 844(i) (1982 & Supp. III 1985). The Government's theory at trial was that Ramsey had hired Jackson to burn down a country corner store operated by Donna Joyce Thomas, with whom Ramsey had a close personal relationship. The alleged motive for the arson was the recovery of proceeds from insurance on the store's inventory and equipment, which Thomas owned. The store burned on Sunday night, August 30, 1981. Jackson testified at trial that on Friday, August 28, he had gone to Ramsey's home looking for Ramsey's son Leon. At that time Ramsey asked Jackson if he wanted to make $500. When Jackson said yes, Ramsey told Jackson to meet him in Haskell the next day near the downtown bank.

Both Jackson and Johnson testified at trial that they drove to Haskell on Saturday, August 29, that Ramsey met them at the bank, and that the three of them drove in Jackson's car to the store, several miles away, at Ramsey's direction. They testified that during this drive Ramsey offered Jackson $500 to burn the store and gave him $200. They further testified that Ramsey told them the side door would be loosened, instructed them to use gasoline, and told them to take whatever they wanted from the store. Jackson, Johnson, and a third person, Joe Joe Rockwell, drove to the store Sunday night and set it on fire with gasoline. Rockwell died in the fire, Jackson was seriously burned, and Johnson suffered cuts and burns.

At the new trial hearing based on Johnson's recantation, Johnson testified that Ramsey had nothing to do with the fire, that Ramsey had not talked to him before the fire about the burning, and that Ramsey had not given anything to him, to Jackson, or to Rockwell. Johnson stated that, on the way back from the fire, Jackson told him to blame Ramsey if they got caught.

When a new trial motion "is based on recanted testimony, the trial court must first be satisfied that the challenged testimony was actually false." *United States v. Bradshaw*, 787 F.2d 1385, 1391 (10th Cir.1986); *see also Ramsey I*, 726 F.2d at 605. In denying the new trial motion at issue, the district court stated that it found "no credibility in Johnson's testimony in this hearing, as it relates to his efforts to exculpate this defendant." Rec., vol. I, doc. no. 21, at 2. The district court's evaluation of evidence presented to support a new trial motion should "remain undisturbed except for most extraordinary circumstances." *United States v. Johnson*, 327 U.S. 106, 111, 66 S.Ct. 464, 466, 90 L.Ed. 562 (1946). In *Johnson*, the Supreme Court stated that an appellate court may reject a district judge's determinations on this issue only when it clearly appears that the findings are wholly unsupported by any evidence. *Id.* at 111–12, 66 S.Ct. at 466–67. This holding is particularly applicable to a district court's assessment of the credibility of a recanting witness. *See, e.g., United States v. Adi*, 759 F.2d 404, 408–09 (5th Cir.1985); *United States v. Carmichael*, 726 F.2d 158, 159–60 (4th Cir.1984). We have carefully considered both the record of the new trial hearing and the transcript of Ramsey's criminal trial. Based on this review, we conclude that the denial of Ramsey's motion for a new trial must be affirmed.

At the time of the new trial hearing, Johnson had been working two or three months for S.G. Everett, an alleged friend and business associate of Ramsey. Everett had put up $400 bail to obtain Johnson's release on an unrelated state charge, had sent him to a lawyer who advised Johnson regarding the perjury implications of a recantation, and had given Johnson $700 to buy a car. These advances and the lawyer's fee were to come out of Johnson's pay. After reviewing the above evidence, the district court stated that it viewed "with suspicion [Johnson's] motives and credibility in attempting to recant part of his testimony to exculpate this defendant." Rec., vol. I, doc. no. 21, at 3. The court's assessment is clearly supported by the new trial hearing record.

Moreover, the transcript of Ramsey's trial contains evidence that, although circumstantial, corroborates the trial testimony of both Johnson and Jackson that Ramsey hired them to burn the store to recover the insurance proceeds. Donna Thomas and her husband bought the convenience store business for $15,000 in February 1981. They put up a boat, a truck, and a house as collateral on a bank loan for part of the purchase price. The previous owners had carried $20,000 insurance on the inventory and equipment, which had lapsed in March. Donna's husband testified that replacement insurance had not been obtained before he left in June and filed for divorce.

Donna testified that she decided to sell the store in late July or early August because she wanted to go into the oil leasing business with Ramsey. An insurance agent testified that Donna had called about insuring the store in mid-July, and that insurance had been written for $30,000 at Donna's request, effective July 16. The agent further testified that Donna had said there was no mortgage on the store. The first payment on the insurance premium was not received until approximately August 20, when part of it was past due.

The owner of the store building, who rented it to Donna, testified that shortly before the fire he spoke to Donna about changing the rental terms in the event she should sell the business. He said he thought he should be getting more rent because the business was doing better, and he wanted Donna to contact him before selling. A grocery wholesaler testified that the last grocery order was delivered to the store on August 11, and that one written up later was cancelled. He further testified that it was unusual for the store to skip ordering groceries for more than one week, and that Donna had only skipped one week two or three times. A store clerk testified that she had been employed at the store a little over a month, and that the Sunday of the fire was the only Sunday the store had been closed during that time. Donna and Ramsey had moved Donna's desk and an antique victrola out of the store the day before the fire.

In addition, we note that Johnson testified at his recantation hearing that the decision to blame Ramsey was made on the way back to Tulsa *after* the fire. However, Johnson's sister testified at Ramsey's trial that the afternoon *before* the fire she overheard Floyd Jackson tell Joe Joe Rockwell's brother that some man had hired him to burn a building so he could collect insurance. She further testified that later that day Rockwell told her the man was Ramsey. She also overheard Jackson say that Ramsey was going to loosen some bolts so that it would be easy to break in. Johnson also testified at his recantation hearing that he lied about Ramsey's involvement at trial because of statements made by the assistant United States attorney handling Ramsey's prosecution. However, evidence was adduced at trial showing that, before ever meeting the Government attorney, Johnson had implicated Ramsey more than once and had picked him out of a photo array.

The cumulation of evidence supports the trial court's decision to credit Johnson's trial testimony over his recantation. Accordingly, the denial of Ramsey's motion for new trial is AFFIRMED.