**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Kerry ·ROBINSON, Defendant–Appellee.**

No. 93–4139.

United States Court of Appeals,
Tenth Circuit.

Nov. 7, 1994.

Richard G. MacDougall, Asst. U.S. Atty. (Scott M. Matheson, Jr., U.S. Atty., and David J. Schwendiman, First Asst. U.S. Atty., D. of Utah, Salt Lake City, UT, with him on the brief), for plaintiff-appellant.

Karl Johnson, Salt Lake City, UT (James Esparza, Salt Lake City, UT, on the brief), for defendant-appellee.

Before ANDERSON, McKAY, and BRORBY, Circuit Judges.

McKAY, Circuit Judge.

On February 5, 1993, Mr. Kerry Robinson was convicted of distributing cocaine on or about September 20, 1991, in violation of 21 U.S.C. § 841(a)(1). This conviction was based largely upon the testimony of two former co-defendants of Mr. Robinson, Mr. Larry Hastings and Mr. James Whitaker. In exchange for favorable treatment from the government, Messrs. Hastings and Whitaker testified that Mr. Robinson had delivered approximately ten kilos of cocaine to Mr. Whitaker's house in August 1991. After completion of the trial, Mr. Robinson's defense counsel learned that, during trial, the government had discovered evidence which tended to identify Mr. Whitaker as the drug courier. The government did not reveal this information to Mr. Robinson or his defense counsel. Mr. Robinson moved for a new trial in light of the newly disclosed evidence. The district court found that the government had withheld evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and further concluded that this evidence met the standard for materiality set forth in *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The court consequently granted the motion for a new trial. The government appeals.

■ The decision to grant (or deny) a motion for a new trial lies within the sound discretion of the district court. *United*

States v. Thornburgh,* 962 F.2d 1438, 1443 (10th Cir.1992); *United States v. Wood,* 958 F.2d 963, 966 (10th Cir.1992). We will therefore overturn that decision only if that court has abused its discretion by rendering a judgment that is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Wright,* 826 F.2d 938, 943 (10th Cir.1987). In making our determination, we give due deference to the district court's evaluation of the salience and credibility of testimony, affidavits, and other evidence. *See Wood,* 958 F.2d at 966. We will not challenge that evaluation unless it finds no support in the record, deviates from the appropriate legal standard, or follows from a plainly implausible, irrational, or erroneous reading of the record. *See United States v. Johnson,* 327 U.S. 106, 111–12, 66 S.Ct. 464, 466–67, 90 L.Ed. 562 (1946); *Summers v. Utah,* 927 F.2d 1165, 1168 (10th Cir.1991); *United States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir.1986); *United States v. Ramsey,* 802 F.2d 393, 394 (10th Cir.1986).

■ The evidence that prompted the district court to order a new trial came from one Benjamin Yokum, a featured player in the sequence of events that culminated in the delivery of nine and one-half kilos of cocaine to Mr. Whitaker's home. The cocaine in question had originally been hidden in a Chevy Blazer parked on the back lot of Mr. Yokum's auto repair shop. During a break in Mr. Robinson's trial, the prosecuting attorney, Mr. Richard McKelvie, questioned Mr. Yokum to determine if he could identify Mr. Robinson or Mr. Whitaker as the individual who retrieved the cocaine from the Blazer. Mr. Yokum could not identify any specific individual as the pick-up man, but he did inform Mr. McKelvie that he had watched as a white man, who might have sported a beard or had red hair and a red, bushy beard,[1] took the cocaine from the Blazer and

---

[1] The parties dispute the content of the statements made by Mr. Yokum to the government. Mr. Yokum, in a sworn affidavit, states that he told the government that the pick-up man had red hair and a red, bushy beard. Mr. Robert Booker, Mr. Yokum's attorney, has likewise sworn that Mr. Yokum informed the government of a red-haired, red-bearded pick-up man. Mr. Booker's statements are corroborated by the sworn affidavit of Ms. Deirdre Gorman, Mr. Whitaker's attorney. Ms. Gorman attests that, on the day of the interview in question, Mr. Booker noted to Ms. Gorman that Mr. Whitaker—who has red hair and a red, bushy beard—

drove away in a pick-up truck. Mr. Yokum also stated that the vehicle had been locked and that the only set of keys had been held by Mr. Joseph Valdez, a long-time drug trafficker and the mastermind of this particular cocaine deal.

Following the interview with Mr. Yokum, Mr. McKelvie informed Mr. Robinson's defense counsel, Mr. Steven Chambers, that Mr. Yokum could not identify Mr. Robinson, Mr. Whitaker, or anyone else as the pick-up man. The government, however, did not tell Mr. Chambers that Mr. Yokum observed the recovery of the drugs from the Blazer. Most significantly, the government concedes that it never told Mr. Chambers that the pick-up man might have been bearded (red and bushy or otherwise). Mr. McKelvie did indicate that Mr. Chambers was free to interview Mr. Yokum or call him to testify.[2]

The potential salience of the evidence elicited from Mr. Yokum by the prosecution looms large in the context of the evidence presented at trial. Neither party contests the sequence of events that led someone to pick up the cocaine which found its way to Mr. Whitaker's home. In the fall of 1991, Joseph Valdez arranged to pick up a shipment of cocaine from his suppliers in Los Angeles. Before leaving for California, Mr. Valdez asked Larry Hastings to find a friend who could safely store the cocaine for a week or two. Mr. Hastings contacted Jim Whitaker, who agreed to hold the cocaine for a short period of time. Mr. Valdez then drove with Benjamin Yokum to Los Angeles and picked up roughly thirteen and one-half kilograms of cocaine. Messrs. Valdez and Yokum hid the cocaine in the door panels of their Geo Metro and returned home to Salt Lake City. Once there, Mr. Valdez gave Mr. Yokum four kilos of cocaine to distribute and stashed the remainder in a Chevy Blazer

sitting on the back lot of Mr. Yokum's auto repair shop.[3] Shortly thereafter (either on that day or on the following day), Mr. Valdez met with Mr. Hastings and told him where to find the cocaine. Later that day (or, again, possibly on the following day), the cocaine was removed from the Blazer and taken to Mr. Whitaker's house.

Some months later, Mr. Valdez fell into the hands of the law; faced with the threat of federal prosecution, he confessed to his sundry misdeeds and agreed to testify against his fellows. Messrs. Yokum, Whitaker, Hastings, and Robinson were subsequently arrested and charged with cocaine distribution. Mr. Yokum's case was severed from that of Mr. Robinson; he eventually pled guilty. Pursuant to a plea arrangement with the government, Mr. Whitaker and Mr. Hastings agreed to testify against Mr. Robinson and likewise pled guilty to substantially reduced charges. Mr. Robinson, while admittedly no angel, asserted his innocence of this particular crime, and was left as the sole remaining defendant.

The testimony of Messrs. Whitaker and Hastings constitutes the primary evidence linking Mr. Robinson to the delivery for which he was convicted. Mr. Hastings testified that he met with Mr. Robinson soon after the meeting with Mr. Valdez and that Mr. Robinson agreed to move the cocaine to Mr. Whitaker's home. Mr. Hastings then left to visit Mr. Whitaker. In Mr. Hastings' account, Mr. Robinson arrived shortly thereafter, carrying the cocaine in a green garbage bag. Mr. Robinson dumped the drugs onto Mr. Whitaker's bed and the three men sampled the cocaine. Messrs. Robinson and Hastings then left, leaving the cocaine on the bed. Mr. Whitaker's testimony largely supported that of Mr. Hastings; significantly,

resembled the pick-up man described by Mr. Yokum. The government concedes that Mr. Yokum indicated that the pick-up man *might* have had a beard, but does not admit that Yokum described the beard as red or bushy.

2. Mr. Chambers did not interview Mr. Yokum. Mr. Robinson's planned defense turned on his strong alibi and his ability to discredit Mr. Whitaker and Mr. Hastings. In this context, Mr. McKelvie's statement that Mr. Yokum could not identify anyone—which failed to inform Mr.

Chambers that Mr. Yokum could offer some description of the pick-up man—could easily have led Mr. Chambers to conclude that Mr. Yokum possessed no knowledge relevant to Mr. Robinson's defense (e.g., knowledge that would implicate Mr. Whitaker or Mr. Hastings).

3. Yokum has stated that Valdez locked the Blazer and left with the only set of keys. Neither Valdez nor Hastings testified as to this detail at trial.

however, the details deviated from those offered by Mr. Hastings. Mr. Whitaker testified that Mr. Robinson delivered the cocaine not in a green plastic garbage bag, but in a paper grocery sack. The cocaine was not dumped onto the bed, and no one sampled the drugs; rather, Mr. Whitaker counted the number of kilos in the sack, and placed the sack in a filing cabinet. Mr. Robinson and Mr. Hastings then departed.

At trial, Mr. Robinson relied primarily upon an alibi defense. He established conclusively, and the government concedes, that he was not in Salt Lake City from September 20 through September 25. The evidence strongly suggests that Mr. Robinson was also absent from the city on September 18 and 19. He therefore contended, with some credibility, that he could not have distributed cocaine "on or about September 20"—the date alleged by the indictment and explicitly supported by the pre-trial statements of both Whitaker and Hastings. Unfortunately for Mr. Robinson, the trial testimony of Messrs. Whitaker and Hastings diverged significantly from their earlier sworn statements. Mr. Whitaker now placed the delivery in late July or early August, and Mr. Hastings testified that the relevant events could have transpired at any point between July and November. This conveniently vague testimony rendered his admittedly strong alibi almost useless, and Mr. Robinson was convicted.

The district court, in its order granting a new trial, recognized that the evidence introduced against Mr. Robinson at trial was hardly overwhelming. The testimony of Mr. Whitaker conflicted with that of Mr. Hastings as to the date and details of the delivery; the testimony of both men deviated from that suggested by earlier sworn statements. Each man, moreover, was well-rewarded for his testimony against Mr. Robinson. The government dismissed two charges against Mr. Whitaker and, pursuant to his guilty plea, entered a motion for a downward departure that reduced a ten-year minimum mandatory sentence to a five-year sentence. Mr. Hastings, who if found guilty faced at least two twenty-year minimum mandatory sentences, received a single ten-year sentence.

The information elicited from Mr. Yokum by the prosecution substantially weakens the already problematic testimony of Messrs. Whitaker and Hastings. Mr. Yokum stated that the man who recovered the cocaine from the Blazer drove a pick-up truck and indicated that this man may have been bearded; more specifically, the pick-up man may have had red hair and a red, bushy beard. The government concedes that Mr. Robinson does not have red hair. Mr. Robinson, moreover, has introduced affidavits alleging that he neither owned a truck nor wore a beard in 1991. It is undisputed, however, that *Mr. Whitaker*, in 1991, had red hair and sported a red, bushy beard. Mr. Whitaker, in fact, so strongly resembles the man described by Mr. Yokum to the government that Mr. Yokum's attorney, upon seeing Mr. Whitaker later that day, commented upon the similarity to Mr. Whitaker's attorney. Furthermore, Mr. Robinson has produced affidavits which indicate that Mr. Whitaker owned a pick-up truck in 1991.

Mr. Yokum's statements, in short, suggest that Mr. Whitaker, not Mr. Robinson, retrieved the drugs from the Blazer. Both Mr. Whitaker and Mr. Hastings testified at trial that the cocaine was delivered to Mr. Whitaker's home shortly after the pick-up. It is hardly unreasonable to conclude that the same individual both recovered and delivered the drugs. Mr. Yokum's testimony, therefore, tends to support the inference that one of the two main witnesses against Mr. Robinson may in fact have committed the crime of which Mr. Robinson was convicted.

■ Due process mandates disclosure by the prosecution of all evidence that favors the defendant and is " 'material either to guilt or to punishment.' " *United States v. Bagley*, 473 U.S. 667, 674, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481 (1985) (quoting *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963)). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383 (Blackmun, J.);

*see also United States v. Johnson,* 911 F.2d 1394, 1404–05 (10th Cir.1990); *Bowen v. Maynard,* 799 F.2d 593, 602–03 (10th Cir. 1986).[4] The potential impact of the undisclosed evidence should be weighed in light of the whole record. What might be considered insignificant evidence in a strong case might suffice to disturb an already questionable verdict. *United States v. Agurs,* 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976).

■ The district court thoughtfully evaluated the likely effect of the undisclosed evidence upon the course of Mr. Robinson's trial and concluded that, under *Brady* and *Bagley,* due process necessitated a new trial. We cannot find that decision to be an abuse of the district court's discretion. While some doubts remain as to what the government actually learned from Mr. Yokum, the record contains ample evidence to conclude that Mr. Yokum's testimony implicates Mr. Whitaker (or at least someone other than Mr. Robinson) as the pick-up man. Mr. Robinson has consistently maintained his innocence of this crime; his defense rested upon his ability to convince the jury that Messrs. Whitaker and Hastings falsely testified against him in order to win favorable treatment from the government. Evidence that Mr. Whitaker retrieved the drugs which were stored in his home would necessarily have buttressed Mr. Robinson's argument to the jury. When viewed in light of Mr. Robinson's already strong alibi defense, the evidence does not simply impeach Mr. Whitaker and Mr. Hastings, but instead exculpates Mr. Robinson by implicating Mr. Whitaker.[5] We therefore conclude that the district court did not abuse its broad discretion in ordering a new trial for Mr. Robinson.

■ The government contends that the district court erred by refusing to employ the five-part test set forth in *United States v. Stevens,* 978 F.2d 565, 570 (10th Cir.1992), which governs the grant of a new trial on the basis of newly discovered evidence. The government's argument lacks merit. The *Stevens* test is inapplicable when a *Brady* violation has occurred. The district court found that the prosecution had failed to disclose material information favorable to the defendant. This failure thus gave rise to a *Brady* violation. We see no reason to upset the district court's determination.

AFFIRMED.

---

**4.** In *Bagley,* Justice Blackmun wrote only for a plurality of the Court with respect to the standard for materiality. However, a majority of the Court expressly agreed with the standard proposed by Justice Blackmun. We have adopted the *Bagley* test. *See, e.g., United States v. Johnson,* 911 F.2d 1394, 1404–05 (10th Cir.1990).

**5.** Impeachment evidence, in any event, is weighed no differently than exculpatory evidence. *See Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Bowen v. Maynard,* 799 F.2d 593, 610 (10th Cir. 1986). If the impeachment evidence is sufficiently damaging to the prosecution's case, a new trial is warranted.