**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 14, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAVID JAMES YARBROUGH,

    Defendant - Appellant.

No. 06-4301
(D.C. No. 2:02-CR-673-TC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

Defendant-Appellant David Yarbrough appeals from the district court's

denial of his second motion for a new trial and request for discovery and an

evidentiary hearing. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and

we affirm.

Background

Mr. Yarbrough was indicted in a superceding indictment on eight counts of

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

making false statements to the government in violation of 18 U.S.C. § 1001 and §2(b). On July 30, 2003, Mr. Yarbrough was found guilty on seven counts and acquitted on count 5. Following the jury verdict, he filed a motion for a new trial. The district court denied his motion and sentenced him to six months' imprisonment, to be followed by three years' supervised release. Mr. Yarbrough appealed the district court's denial of his motion for a new trial, and we affirmed the district court's decision. United States v. Yarbrough, 137 F. App'x 147 (10th Cir. 2005) (unpublished).

We described the facts underlying Mr. Yarbrough's case in detail in our previous disposition, see id. at 149–53; thus, we only provide a summary here. Mr. Yarbrough worked as the division chief for the monitoring division at the Deseret Chemical Depot (Depot) near Tooele, Utah. He supervised technicians who maintained various air-monitoring systems as part of the Depot's program of destroying chemical weapons. The technicians maintain an automated continuous air monitoring system (ACAMS), comprised of a series of machines or units, that continuously monitor the air released from the test facilities for any trace of toxic chemicals. Technicians continuously test the ACAMS units by injecting the unit with a dose of a toxic chemical to ensure the accuracy and reliability of their operation. Technicians record the data from those challenges in three ways. First, the technicians record the results of their challenges on log sheets kept with each ACAMS unit. Second, the units themselves record the results on a strip of

paper known as a strip chart which serve as a backup corroborating the log readings. Third, a computer records the data from all the ACAMS units. Every four weeks, a report, known as an INACCMO report, is prepared for the Depot's supervisors as well as various regulatory and military agencies.

The government's theory at trial was that Mr. Yarbrough recorded data from the ACAMS on his personal worksheets that differed from the log sheets. The motive was to make it appear that baseline tests of certain units were passing. At trial, Mr. Yarbrough admitted that he directed a statistician to use the data from his worksheets to create the INACCMO report. Aplt. App. at 1373–74. Anthony Pavlik, the investigator, testified that Mr. Yarbrough admitted to changing the data to make it appear that a unit (station 26D) passed when it had failed. Id. at 1232–35. When Mr. Pavlik asked about another unit, Mr. Yarbrough stated "since I admitted to the one, what's the point in going through all of them?" Id. at 1235. Mr. Yarbrough was convicted on seven counts for making the false statements and for causing these false statements to be included in two INACCMO reports. Mr. Yarborough defended on the basis that the operational logs were designed for a continuous baseline test and that it was unnecessary to consider failing data on a recertification baseline test. Id. at 1333–37, 1364, 1366–67.

Following his prior appeal, Mr. Yarbrough filed a second motion for a new trial based on newly-discovered evidence and requested discovery and an

evidentiary hearing. The following documents, which the government produced following trial, is the evidence which forms the basis of Mr. Yarbrough's motion: computer recorded data (the "PDARS"), several strip charts which recorded the readings of the "ACAMS" air monitors, and two monitoring data compilations prepared for the Depot Commander ("the Commander's Spreadsheet"). In his motion, Mr. Yarbrough argued that these documents show that the government possesses two versions of the logs, altered and unaltered, and that the grand jury must have been shown the unaltered logs. The district court heard argument on the motion and in an oral ruling followed by a summary order denied Mr. Yarbrough's motion for a new trial and request for discovery and an evidentiary hearing.

On appeal, Mr. Yarbrough claims that he is entitled to (1) discovery and an evidentiary hearing on his motion for a new trial; (2) a new trial based on newly discovered evidence favorable to him and not disclosed; (3) a new trial based on newly discovered evidence that his conviction was obtained with false evidence; and (4) dismissal of the superseding indictment because false evidence was presented to the grand jury and was materially different from evidence at trial.

Discussion

A district court may grant a new trial in "the interest of justice." Fed. R. Crim. P. 33. To establish a violation under Brady v. Maryland, 373 U.S. 83

- 4 -

(1963), warranting a new trial, "a defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material." United States v. Combs, 267 F.3d 1167, 1172 (10th Cir. 2001) (citations omitted). We review de novo the district court's denial of Mr. Yarbrough's Rule 33 motion because it alleges a Brady violation. United States v. Pearl, 324 F.3d 1210, 1215 (10th Cir. 2003). A prosecutor who knowingly presents false evidence violates due process, regardless of whether the evidence is relevant to substantive issues or to witness credibility. Napue v. Illinois, 360 U.S. 264, 269 (1959). In order to establish a due process violation, a defendant must show that (1) the evidence was in fact false, (2) the prosecution knew it to be false, and (3) the evidence was material. United States v. Caballero, 277 F.3d 1235, 1243 (10th Cir. 2002). We review the district court's rejection of this theory de novo. Foster v. Ward, 182 F.3d 1177, 1192 (10th Cir. 1999). Finally, we review the denial of an evidentiary hearing for an abuse of discretion. United States v. Smith, 413 F.3d 1253, 1282 (10th Cir. 2005).

We have carefully reviewed the "newly discovered evidence" against a backdrop of what occurred at trial. Substantially all of the evidence Mr. Yarbrough claims is newly discovered was disclosed to him and available at trial. Even assuming some was not available, he has not established that the "newly discovered evidence" is material, i.e., a reasonable probability that the outcome would have been different had the evidence been disclosed. See United States v.

Robinson, 39 F.3d 1115, 1118 (10th Cir. 1994). His defense at trial was that first-shot failures need not be recorded as part of recertification. His current defense is that he merely reported data from the log sheets that others had falsified. The evidence to present this defense is not new or is simply in a different format, i.e., on the annotated copies of Mr. Yarbrough's worksheets which Kevin Draper produced as part of his investigation. Aplt. App. at 353–75. Regardless, at trial, many witnesses testified, on both direct and cross examination, regarding alterations in the log sheets. See, e.g., id. at 1149–52, 1159–61, 1165–66, 1190–92, 1204–05. Merely because prior data has been compiled in a different form or marshaled for a different theory (a theory that obviously cuts both ways and would meet strong resistance given the extant testimony) does not warrant a new trial.

In addition, most of the new evidence is not material because Mr. Yarbrough was charged with providing inaccurate data recorded on his worksheets to be incorporated into the INACCMO reports. Thus, the "newly discovered evidence" does not somehow vitiate, let alone undermine, the substantial evidence upon which he was convicted at trial. In that regard, Mr. Yarbrough has always been in the best position to know what happened, and we have the investigator's testimony that Mr. Yarbrough admitted to falsifying data, id. at 1232–35, the signed statement admitting he altered the data so the baseline would pass, id. at 1241, 1383, and the cross examination of Mr. Yarbrough where

he admitted to giving data to Ms. Day that omitted first-shot failures and differed from the log sheets, <u>id.</u> at 1373.  Suffice it to say that Mr. Yarbrough has not met his burden under any of his theories warranting a new trial or discovery and an evidentiary hearing.

     AFFIRMED.

          Entered for the Court


          Paul J. Kelly, Jr.
          Circuit Judge