**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 2, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

WILLIAM C. CRABBE,

      Defendant-Appellant.

No. 10-1226

(D. of Colo.)

(D.C. No. 1:06-CR-00294-MSK-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

This case arises out of William Crabbe's criminal conviction for failure to pay taxes and filing false tax returns. Crabbe challenges the district court's denial of his motion for a new trial on two grounds: (1) the government withheld exculpatory *Brady* material regarding a testifying witness, and (2) a new trial is warranted by newly discovered evidence. Crabbe also appeals the district court's denial of his motion for discovery to support his request for a new trial. After

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

carefully reviewing the record on appeal, we conclude the district court properly denied Crabbe's motions for a new trial and additional discovery.

Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district court's decisions.

## I. Background

Crabbe and James "Steve" Rowan were the majority owners of Columbine Healthcare Systems, Inc., a staffing agency that provided temporary nurses to health care institutions. Rowan was the president and primary manager. Crabbe was the vice president, but witnesses at trial testified he was significantly less involved in Columbine's day-to-day operations. By law, employers must file a quarterly 941 statement with the Internal Revenue Service (IRS), reporting the employee payroll and remitting income and Social Security taxes withheld from employee paychecks. For some period of time, Columbine did not comply with this requirement, although it continued to withhold money from employees.

Crabbe testified that he learned of Columbine's mounting employment tax liability in 1999. He suggested hiring a tax attorney to address the problem, and Rowan agreed. But, Crabbe claims, Rowan refused to do more than put the attorney on retainer, and insisted that Columbine leave the taxes unpaid until its revenues increased. Pursuant to the attorney's recommendation, Rowan did agree to stay current with the new tax obligations, and for several months in 1999

Columbine correctly reported and paid its taxes. But soon Columbine again ceased all reporting and payment.

In 2001, the tax attorney contacted Crabbe and again recommended that Columbine attempt to stay current with its tax obligations. Crabbe raised the issue once more with Rowan. They finally agreed Crabbe would file the past-due 941s and Rowan would file the current and future 941s.

Crabbe then prepared and submitted some of the outstanding 941s. But in preparing the forms, he used the payroll information for the corporate employees only and failed to include the information for the nurse employees. Crabbe testified at trial that this omission was unintentional. He claimed he did not realize that the payroll information for the corporate and nurse employees were kept in separate databases and that a complete 941 would require a report generated by each.

In 2002, Wayne Hoover, Columbine's accountant, realized these 941s were inaccurate and informed Crabbe of this fact. Hoover instructed a corporate employee to file amended forms. By July of 2004, Columbine had become the subject of a criminal tax investigation. At this point, the work of correcting the flawed 941s had been underway for more than a year, but no amended forms had been filed. In August of 2004, after learning of the investigation, Crabbe filed the amended 941s himself.

Both Crabbe and Rowan were indicted on more than thirty counts of tax-related crimes. Rowan pleaded guilty in February of 2008. Three days later, Rowan testified against Crabbe at his trial. Crabbe was subsequently convicted of ten counts of failure to pay taxes in violation of 18 U.S.C. § 2 and six counts of filing false tax returns in violation of 26 U.S.C. § 7203. Crabbe moved for a new trial based on insufficiency of the evidence, but the motion was denied by the district court.[1]

In June of 2009, Rowan's attorney filed a motion to continue sentencing, explaining that Rowan had been hospitalized with liver disease. He also expressed doubts about his client's mental competency, given his state of confusion and disorientation. The court ordered a forensic psychiatrist to evaluate whether Rowan was competent to be sentenced.

The forensic psychiatrist issued a report concluding that, beginning in March 2007, Rowan's mental state had fluctuated between delirium (reflected in severe disorientation, stupor, and distorted perceptions) and lucid periods. She explained that during periods of delirium, it was likely Rowan would not be competent to be sentenced, but that during the lucid period in which she interviewed him, he was competent. She stated finally that she was unable to give an opinion whether, on any particular subsequent date, Rowan would be

---

[1] For additional information on the factual and procedural background of this case, see this court's resolution of Crabbe's direct appeal in *United States v. Crabbe*, 364 F. App'x 412 (10th Cir. 2010).

competent to be sentenced; she would need to reevaluate him on the day of his sentencing. Rowan died before he could be sentenced.

Based in part on this information, Crabbe filed a motion for a new trial. He argued the government withheld material information prior to trial—namely, Rowan's general lack of capacity to testify, and that Rowan was not mentally competent at the time that he testified against Crabbe. The motion attached the psychiatrist's report and an affidavit from an assistant who helped with Rowan's transportation and other tasks, stating, "Beginning in the latter months of 2007 and throughout the remaining portions of his life, Mr. Rowan was confused almost 100% of that time." R., Vol. I at 36. The assistant also opined that "if anyone had been around [Rowan] for even ten minutes they would have had to have known that something was seriously wrong with the man." *Id.* at 37.

Soon afterward, Rowan's former counsel, Ted Merriam, filed an ex parte motion with the court explaining that after reviewing his own notes and the records of Rowan's trial testimony, he now believed there "may [have been] fraudulent conduct by Mr. Rowan in providing testimony in Dr. Crabbe's case." *Id.* at 138. Merriam sought the court's guidance on the question of whether he was obligated to disclose this information under the Colorado Rules of Professional Conduct and, if he were not so obligated, if he might do so given that Rowan's daughter had waived the attorney-client privilege.

The district court denied Merriam's motion, stating that he had provided "no authority for this court to make such a determination." *Id.* at 211. Crabbe then filed a motion seeking discovery from Merriam to support his motion for a new trial. The court denied Crabbe's motions for a new trial and discovery.

## II. Discussion

Crabbe challenges the district court's denial of his motion for a new trial and his motion for discovery. We address each argument in turn.

### A. *Motion For a New Trial Based On Brady Violations*

First, Crabbe contends he is entitled to a new trial because the government violated the dictates of *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose evidence of Rowan's incompetence.

We review a denial of a motion for a new trial based on an alleged *Brady* violation de novo. *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009). But we defer to the district court's fact finding unless clearly erroneous. *Id.*

Due process requires the government disclose all evidence that favors the defendant and "is material either to guilt or to punishment." *United States v. Robinson*, 39 F.3d 1115, 1118 (10th Cir. 1994) (quotation omitted). "[T]o establish a *Brady* violation, the defense must prove that: (1) the prosecution suppressed the evidence; (2) the evidence would have been favorable to the accused; and (3) the suppressed evidence is material." *United States v. Wolf*, 839

-6-

F.2d 1387, 1391 (10th Cir. 1988). The defendant cannot show suppression where the evidence was not known to the government at the time of trial. *United States v. Erickson*, 561 F.3d 1150, 1163–64 (10th Cir. 2009); *see also Bowen v. Maynard*, 799 F.2d 593, 612 (10th Cir. 1986). Evidence is "material" under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Robinson*, 39 F.3d at 1118 (quotations omitted). This inquiry "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Rather, the defendant need only show that the ultimate verdict is not "worthy of confidence." *Id.*

The district court denied Crabbe's motion after finding the first prong of a *Brady* violation was not met. It concluded the prosecutors did not know of Rowan's diminished capacity at the time of trial. The only evidence Crabbe offered to suggest knowledge was: (1) the government's admission that Rowan was frail and spoke in a low voice in pretrial meetings; (2) the fact that Rowan's assistant drove him to the meeting with prosecutors, suggesting he was unable to drive himself; and (3) the assistant's testimony that anyone spending "ten minutes" with Rowan would have known that he was incapacitated. R., Vol. I at 37.

The court found Rowan's physical frailty and the fact that he was driven to a meeting did not create an inference that the government knew of his alleged mental condition. The court also dismissed the assistant's lay opinion as unconvincing, vague, and contradicted by his subsequent assertion that Rowan "may have part of the time seemed coherent." *Id.* at 36. In addition, the court pointed to the fact that neither the court, Crabbe's lawyer, nor Crabbe himself had observed the alleged incapacity when Rowan testified at his plea hearing and at trial. This reasoning is persuasive. We conclude the finding that the government was not aware of Rowan's condition is not clearly erroneous.

In an attempt to overcome this difficulty, Crabbe offers an alternative argument. He contends the government committed a *Brady* violation in withholding the specific facts that Rowan appeared frail and spoke in a low voice during pretrial meetings and that he had a driver.[2] Crabbe asserts knowledge of these facts would have caused him to investigate Rowan's competence further, furnishing him with evidence that would allow him to impeach or exclude Rowan's testimony at trial.

The government undeniably knew of these facts at the time of trial. *See id.* at 180–81. But we find this evidence was not material under *Brady*. Even if

---

[2] Crabbe also asserts the government withheld the fact that prosecutors internally questioned whether Rowan was competent to testify. But the government vigorously denies that any such internal debate took place, and Crabbe offers no evidence to support his claim. We therefore do not address this argument.

-8-

disclosure had led Crabbe to investigate further and discover sufficient evidence of Rowan's incompetence to either discredit or exclude his testimony, it is not reasonably probable that the result of the proceeding would have been different. Because Rowan's testimony did not play an important role in the government's case against Crabbe, the suppressed evidence does not undermine our confidence in the jury's verdict.

At trial, it was undisputed that Columbine did not remit the withheld employee funds and that Crabbe filed false 941s omitting information about the nurse employees. Crabbe's defense was that he lacked knowledge and intent. Specifically, he contended his failure to pay the taxes was not "willful," but rather the result of Rowan's stubborn refusal to do so. Crabbe also asserted he submitted false 941s unintentionally. He claimed that he prepared the 941s according to Rowan's instructions to simply open a payroll computer program and click "print 941s," and that he did not realize the information for nurse employees was kept in a separate database, requiring an additional search.

Rowan offered conflicting testimony, contending it was Crabbe who initially refused to file the 941s. Rowan also stated that he instructed Crabbe to generate payroll reports for both the corporate and nurse employees to obtain the correct figure for the 941s, and that Crabbe deliberately chose to ignore him.

Although the district court did not address the materiality question directly, it observed "[a]s the Court's Opinion and Order denying Mr. Crabbe's motion for

a new trial makes clear, it was not necessary to rely on Mr. Rowan's testimony in order to support the jury's verdict against Mr. Crabbe." *Id.* at 242 n. 5. In the referenced order, the court denied Crabbe's first motion for a new trial based on insufficiency of evidence. There, the court set forth the evidence supporting Crabbe's conviction and concluded that this evidence was sufficient to uphold the jury's finding of guilt. In so doing, the court did briefly mention Rowan's testimony. But the bulk of its discussion focused on other points of evidence, largely derived from Crabbe's own testimony, that suggested guilt.

We agree it is unlikely the jury relied on Rowan's testimony in convicting Crabbe for two reasons. First, Rowan's testimony lacked credibility. Multiple witnesses established that Rowan ran Columbine in a despotic manner and marginalized Crabbe, making Rowan's claim that it was Crabbe who refused to file the 941s implausible. We note the prosecutors at trial appear to have reached the same conclusion; when the government marshaled the evidence against Crabbe in closing argument, it did not refer to Rowan's testimony at all. The government's only allusion to Rowan's testimony occurred in rebuttal, when one prosecutor stated "I'm not saying Rowan is a good guy. You saw what I saw. It's absurd even to suggest that." R., Vol. XXIV at 58.

And second, the government presented significant evidence, independent of Rowan's testimony, suggesting Crabbe had the requisite knowledge and intent. This evidence included the following:

(1) Crabbe's own testimony that he wished to structure the business so that no employment taxes would have to be paid for the nurses, and that he only reluctantly accepted the advice that this would be impossible;

(2) testimony that Crabbe was aware of Columbine's mounting unpaid tax liabilities, but took only occasional and mostly ineffectual steps to address the problem;

(3) evidence that during the years that Crabbe knew about the company's unpaid tax liability, he personally withdrew hundreds of thousands of dollars in profit from Columbine;

(4) Crabbe's admission that when he prepared the past due 941s, he did so without consulting with the company's accountant, the company's tax attorney, the corporate employees ostensibly responsible for filing 941s, or the IRS;

(5) documentary evidence showing that immediately before and during the time that Crabbe filed the inaccurate 941s, he also saw and signed tax forms that Columbine filed with the State of Colorado that had information obviously inconsistent with the 941s;

(6) testimony that Crabbe was advised by employees that their taxes were not being properly credited;

(7) the fact that two of the false 941s listed Columbine's "number of employees" as 21 and 31 respectively, at a time when Columbine employed over 100 employees;[3] and

(8) Crabbe's admission that after he learned of his error in filing the 941s, he took no action to ensure that the amended forms were filed for more than a year and a half, even though he knew little progress was being made, and that he only followed up upon learning that Columbine was the subject of a criminal investigation.

Given the limited value of Rowan's testimony and the weight of the evidence against Crabbe, we find it is not reasonably probable that any information discrediting Rowan would have changed the "result of the proceeding." Crabbe is therefore unable to satisfy *Brady*'s materiality requirement. We affirm the district court's finding that the government did not commit a *Brady* violation by withholding material exculpatory evidence.[4]

---

[3] Crabbe claimed that he did not prepare these particular 941s, and that he only signed them without reading them. But the envelope to the IRS was made out in his handwriting, and Crabbe admitted to preparing the other 941s submitted during this time.

[4] In arguing that Rowan's evidence was material, Crabbe points to the government's statement in a 5K1.1 motion for a downward departure in Rowan's sentence. The motion states Rowan's testimony was "helpful" and "highlight[ed] important points in the Government's case." R., Vol. III, Doc. 241 at 3. Despite this statement, the government is not judicially estopped from asserting here that Rowan's testimony was not essential for conviction. The two positions are not clearly inconsistent, as Rowan's testimony may have been helpful without being

(continued...)

### B. *Motion For a New Trial Based on Newly Discovered Evidence*

Crabbe also contends the district court erred in denying his motion for a new trial based on the newly discovered evidence of Rowan's incompetence.

Ordinarily, we review such a denial for abuse of discretion. *Erickson*, 561 F.3d at 1163. Denial of a new trial is abuse of discretion only where it is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Redcorn*, 528 F.3d 727, 745 (10th Cir. 2008) (quotations omitted). Here, however, while both parties briefed the district court on the issue, the court did not address it directly in its order. The court's denial of the motion for a new trial appears to have been solely on the ground that the government did not commit a *Brady* violation or fraud upon the court.

Although the district court erred in failing to address this question, we may nonetheless affirm if we find Crabbe's argument had no merit. "We may affirm the rulings of the lower court on any ground that finds support in the record, even where the lower court reached its conclusions from a different or even erroneous course of reasoning." *United States v. Ledford*, 443 F.3d 702, 707 (10th Cir. 2005) (quotation omitted). We will exercise that discretion where, as here, "the parties have identified the issue, [] they have had an opportunity to make

---

[4](...continued)
necessary. *See Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (stating that, to show judicial estoppel, "a party's later position must be clearly inconsistent with its earlier position" (quotation omitted)).

arguments to us concerning it, and [] no further factual development is necessary to resolve it." *United States v. Pursley*, 577 F.3d 1204, 1224 (10th Cir. 2009).

A motion for a new trial based on newly discovered evidence is analyzed under a five part test. *United States v. Quintanilla*, 193 F.3d 1139, 1147 (10th Cir. 1999). To prevail, the defendant must show: (1) the evidence was discovered after trial, (2) the failure to learn of the evidence was not caused by the defendant's own lack of diligence, (3) the new evidence is not merely impeaching, (4) the new evidence is material to the principal issues involved, and (5) the new evidence would probably produce an acquittal in a new trial. *Id.*

The parties do not dispute that the first and second prongs of this test are met here. And we agree with Crabbe that the newly discovered evidence is not merely impeaching; Crabbe may well have been successful in excluding Rowan's testimony on grounds of incompetence if he had possessed the information in the forensic psychiatrist's report. The psychiatrist's conclusion that Rowan had fluctuated between delirium and lucidity since March of 2007 obviously implicates his testimony in February of 2008.

But for the same reasons discussed above, we find the newly discovered evidence of Rowan's incompetence would probably not result in an acquittal in a new trial. There is sufficient evidence on the record independent of Rowan's testimony for a jury to conclude Crabbe possessed the necessary knowledge and intent.

-14-

### C. Motion for Discovery

Finally, Crabbe challenges the district court's denial of his motion for discovery to support his pursuit of a new trial. We review discovery rulings for abuse of discretion. *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 647 (10th Cir. 2008). "[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to a new trial, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *United States v. Velarde*, 485 F.3d 553, 560 (10th Cir. 2007).

The district court denied Crabbe's request to depose Rowan's attorney in part because there was nothing in his ex parte motion to suggest that his testimony would bear on the prosecutors' knowledge of Rowan's incompetence. This ruling was clearly based on the court's understanding that Crabbe's motion for a new trial was rooted only in his claim that the prosecutors committed a *Brady* violation. But, as noted above, Crabbe also sought a new trial on the grounds of newly discovered evidence. Because a defendant pursuing a new trial on this theory need not show the prosecutor had knowledge of the new evidence, the court's ruling was insufficient.

Nonetheless, we find the attorney's testimony would not aid Crabbe in obtaining a new trial under either the *Brady* or the newly discovered evidence theory. As discussed above, Crabbe's motion for a new trial fails on both counts

because he cannot show the information was material or any likelihood that he would have been acquitted if Rowan's testimony were excluded. The attorney's evidence, which would bear only on the question of whether Rowan's testimony should have been excluded, would not address this issue.

Accordingly, we affirm the district court's denial of the motion.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge